783 A.2d 246 (2001)
345 N.J. Super. 1
BRACH, EICHLER, ROSENBERG, SILVER, BERNSTEIN, HAMMER & GLADSTONE, P.C., Plaintiff-Respondents,
v.
Ifeoma EZEKWO, M.D., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 2001.
Decided October 22, 2001.
*249 Ifeoma Ezekwo, appellant, argued the cause pro se.
David J. Klein argued the cause for respondent (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Roseland, attorneys; Mr. Klein, of counsel and on the brief); Christopher J. Carey also argued the cause for respondent (Graham, Curtin & Sheridan, Atlantic City, attorneys; Mr. Carey and Patrick B. Minter, on the brief).
Before Judges PETRELLA, STEINBERG and ALLEY. *247
*248 The opinion of the court was delivered by ALLEY, J.A.D.
This matter had its inception in January 1998, when plaintiff, the Brach Eichler law firm, sued defendant, its former client, Ifeoma Ezekwo, for unpaid legal fees she allegedly incurred in connection with its representation of her. Defendant appeals from the award of judgment against her in the amount of $15,205 for those fees. She also appeals from an award of attorney's fees to the plaintiff law firm, as attorneys acting pro se, which the trial judge predicated on R. 4:58-2, the offer of judgment rule. We affirm.
In July 1992, defendant retained plaintiff to represent her in a number of unsuccessful attempts to obtain board certification and in disputes with several insurance companies. Plaintiff memorialized the hourly fee arrangement for its services to defendant in a letter dated July 23, 1992. The controversies were with Met Life Health Plan, Bronx Health Plan, Blue Cross/Blue Shield, Montefiore Hospital, Manhattan Eye, Ear and Throat Hospital, Our Lady of Mercy Hospital, Beth Israel Hospital, and two medical certification boards, American Board of Ophthalmology and American Board of Internal Medicine.
Briefly described, defendant's alleged claims against the various parties, and the services allegedly rendered by the plaintiff on her behalf, were these:

Beth Israel Hospital
Defendant sought privileges in internal medicine and in her specialty of ophthalmology at Beth Israel Hospital and retained plaintiff on July 22, 1992, to help her obtain these privileges. Plaintiff met with officials of the hospital and attended hearings for defendant. Defendant dismissed plaintiff as her attorney on August 20, 1993.

Montefiore Hospital
After defendant applied for medical staff privileges in internal medicine at Montefiore Hospital, the hospital suggested that she had not given them all of the information they needed to process her request. When she retained plaintiff, defendant requested that a complaint be filed against the hospital and later sent plaintiff a letter dated June 1, 1993, asking that suit be filed immediately. Plaintiff consulted with defendant and corresponded with counsel for the hospital, but defendant dismissed plaintiff on August 20, 1993, and at that time plaintiff had filed no complaint against Montefiore Hospital. The hospital did not accept defendant.

Our Lady of Mercy Hospital
Defendant had privileges at a hospital named Pelham Bay that Our Lady of Mercy *250 purchased. Our Lady of Mercy had granted defendant provisional privileges, but defendant was having difficulty exercising her privileges. At the time she retained plaintiff, defendant requested that a lawsuit be filed. Plaintiff did not file a lawsuit but prepared a letter on behalf of defendant. Defendant dismissed plaintiff on August 20, 1993.

Manhattan Eye, Ear and Throat Hospital
Defendant sought admitting privileges for her patients at MEETH but was granted only provisional privileges. Defendant retained plaintiff on November 30, 1992, to help defendant gain full admitting privileges for defendant's patients.
Plaintiff wrote a letter for defendant to the Public Health Council complaining about the way defendant had been treated, and it also prepared and filed a lawsuit on defendant's behalf. The case was still pending at the time she dismissed plaintiff.

MetLife
After MetLife had not paid various claims for services rendered by defendant to patients covered by MetLife, she retained plaintiff to initiate a debt collection action against MetLife. Plaintiff corresponded with MetLife regarding the outstanding bills and termination. Despite many requests by defendant to initiate a lawsuit, plaintiff did not. MetLife canceled defendant as of May 6, 1993, based on the termination clause in the contract. MetLife also supplied plaintiff with a list of reasons why it had not paid certain bills of defendant. Plaintiff never filed suit as instructed, and defendant discharged plaintiff from representing her interests regarding MetLife on August 20, 1993.

Blue Cross/Blue Shield
Defendant applied for admission as a medical provider in the field of internal medicine and ophthalmology in the Blue Cross/Blue Shield health plan. When her application was denied, she retained plaintiff to challenge the denial. Defendant further instructed plaintiff to initiate a debt collection action. Plaintiff prepared letters, reviewed denial letters and made telephone calls to Blue Cross/Blue Shield and later consulted with plaintiff, but as of the date of its discharge by defendants on August 20, 1993, it had filed no lawsuit as defendant had requested.

Bronx Health Plan
Defendant applied for admission as a health care provider in the Bronx Health Plan. After her application was denied, she instructed plaintiff to initiate legal action against Bronx Health Plan challenging the denial. Plaintiff consulted with defendant and sent letters to Bronx Health Plan, but when defendant dismissed plaintiff in August 1993 no lawsuit had been filed. Defendant was not admitted to the plan.

American Board of Internal Medicine
Defendant applied for but was denied certification by the American Board of Internal Medicine. Defendant was Board-eligible but failed the Board's exam twice. Defendant contended there was foul play on the last occasion and wanted to review other candidates' tests. The Board agreed but wanted her to waive her right to contest the final decision. The Board agreed to reread the exam by hand and review it with defendant, but she declined. This matter was still pending when defendant dismissed plaintiff on August 20, 1993.

American Board of Ophthalmology ("ABO")
Defendant's efforts to obtain certification in ophthalmology from the ABO were denied twice. Defendant was Board-eligible, and felt that the program director treated her unfairly. A suit was filed by plaintiff in state court and removed to U.S. District Court, which remanded it to state court on motion. The case was pending in *251 state court when defendant dismissed plaintiff.
Judge Harry Margolis held a four day bench trial and rendered a judgment in favor of plaintiff for $15,205. This was about $6,000 less than the $21,599.61 sought by plaintiff. He also granted plaintiff's application to amend the judgment to include attorneys fees pursuant to R. 4:58, the "offer of judgment" rule, and entered a final order on September 15, 2000, in favor of plaintiff in the amount of $25,417.

I
Defendant asserts that "the trial court's findings are unsupported by adequate, substantial and credible evidence tendered during the trial of this matter." Specifically, defendant argues that the evidence adduced by plaintiff at trial does not support a fee of $15,205; the court failed to consider evidence of earlier payments by defendant and to set them off against plaintiff's claim at trial; and the findings of the trial judge point to a different verdict.
Appellate review of the findings of a trial judge is limited, and the reviewing court should not disturb the findings unless "they are so manifestly unsupported by ... credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412, 713 A.2d 390 (1998) (citing Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974)). A trial court's findings generally are binding on appeal "when supported by adequate, substantial, credible evidence." Ibid.
Defendant raises several arguments in support of her contention that the evidence at trial did not support the award of damages. Specifically, defendant argues that because some of plaintiff's time sheets were missing, and because plaintiff could not produce its long distance telephone bills from 1992-1993, this justifies an inference that plaintiff did not do the work.
Plaintiff produced most of its time sheets, and one of its attorneys testified that the work reflected on the firm's billings was in fact done. Defendant did not testify as to any instance where the work billed was not done or a telephone call did not take place. The details of the work performed, moreover, appears on the bills themselves.
Defendant also raises the issue of "double billing" by one of plaintiff's attorneys, but the trial judge credited defendant $895 representing the full amount of the "double billing." Defendant's argument that the court was unable to determine whether there was other "double billing" due to the missing time sheets is insufficient to overcome the trial court's findings. The bills themselves reflect the services rendered and would have reflected any other conferences between two or more attorneys from Brach, Eichler. Defendant has failed to identify any other instances that would support any further credits.
Defendant also argues she should be given credit for payments made in the amount of $2,281.60 and $2,072. She remitted those amounts in payment of the June 1 and June 8, 1993 bills, however, and those charges were not included again in later bills and were not part of the damages sought by plaintiff or awarded by Judge Margolis. Accordingly, there are no additional credits to which defendant is entitled.
Defendant repeatedly cites part of the trial court's decision where defendant states that Judge Margolis found that "the Brach firm did little, if anything, with respect to the lawsuit against MetLife...." The full sentence, which represents only a portion of the judge's finding regarding MetLife, reads as follows, however:

*252 In sum and substance, the Brach firm did little, if anything, with respect to a lawsuit against MetLife except tell the defendant that she had no case against MetLife, but told the defendant to gather information against MetLife.
Defendant attempts to use the quoted portion of the decision regarding MetLife as an argument that plaintiff did no work on the file and therefore was not entitled to the $1600 fee awarded by the trial court. We reject that contention. The balance of defendant's argument that the evidence did not support the verdict, or that the court's findings supported a different verdict, consists of defendant's argument that the court did not specify the period covered by the fee award. The bills are in evidence, however, and plaintiff only sought payment for the unpaid portion of those bills. Accordingly, it is of no moment that the judge did not make a specific recitation as to the period for which he awarded the charges.
We are satisfied that there was adequate, substantial and credible evidence in the record to support the trial court's findings and, accordingly, we do not disturb its damage award.

II
Defendant next urges that a previous judge in the case ruled that she could testify as her own damages expert, and that the trial court consequently erred by not allowing her "calculation" of damages into evidence. Supporting data and facts are vital to an expert's opinion "when the opinion is seeking to establish a cause and effect relationship." Rubanick v. Witco Chem. Corp., 242 N.J.Super. 36, 49, 576 A.2d 4 (App.Div.1990), modified on other grounds, 125 N.J. 421, 593 A.2d 733 (1991). Conjecture and speculation cannot be used as a basis for damages. Lesniak v. County of Bergen, 117 N.J. 12, 21, 563 A.2d 795 (1989), (citing Budden v. Goldstein, 43 N.J.Super. 340, 347, 128 A.2d 730 (App. Div.1957)).
The resultant prohibition against what is called a "net opinion" bars expert testimony based on unfounded speculation or mere possibilities. Grzanka v. Pfeifer, 301 N.J.Super. 563, 580, 694 A.2d 295 (App. Div.1997), certif. denied, 154 N.J. 607, 713 A.2d 498 (1998). Here, defendant sought to introduce a "calculation" of her alleged damages in defense of plaintiff's damages claims. Defendant has not furnished a copy of this "calculation," but the record reveals that defendant attempted during the trial to read from the calculation. Specifically, defendant wanted to read into evidence the alleged damages she sustained when plaintiff failed to file certain lawsuits. As appears from the record, however, defendant did not have supporting data or facts for this estimate and the trial court thus correctly excluded this "calculation" as speculative and conjectural.
Defendant further contends that she was erroneously barred from interposing the defense of malpractice. The only time the issue arose was at the time of summation, when she attempted to read part of her written summation dealing with her claim that the firm had committed malpractice by failing to file, or in delaying the filing of, lawsuits for her.
To prevail on a claim of legal malpractice, a plaintiff must prove the existence of an attorney-client relationship that gives rise to a duty of care, the breach of such duty, and proximate causation. See DeAngelis v. Rose, 320 N.J.Super. 263, 274, 727 A.2d 61 (App.Div.1999). Generally speaking, a lawyer is required to exercise that "degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." St. Pius *253 X House of Retreats v. Camden Dioc., 88 N.J. 571, 588, 443 A.2d 1052 (1982). Furthermore, the party asserting malpractice must, under New Jersey case law, present expert testimony that establishes the standard of care against which the attorney's actions are to be measured. See Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985); Sommers v. McKinney, 287 N.J.Super. 1, 10-11, 670 A.2d 99 (App.Div. 1996); Aldrich v. Hawrylo, 281 N.J.Super. 201, 214, 656 A.2d 1304 (App.Div.1995); Brizak v. Needle, 239 N.J.Super. 415, 431-32, 571 A.2d 975 (App.Div.1990).
It is true that exceptions to the expert testimony requirement may be made where the questioned conduct presents such an obvious breach of an equally obvious professional norm that the fact-finder could resolve the dispute based on its own ordinary knowledge and experience and without resort to technical or esoteric information, see Rosenberg, supra, 99 N.J. at 325, 492 A.2d 371; Sommers, supra, 287 N.J.Super. at 10-11, 670 A.2d 99; Aldrich, supra, 281 N.J.Super. at 214, 656 A.2d 1304; Brizak, supra, 239 N.J.Super. at 431-32, 571 A.2d 975. This case, however, does not fall within that category of cases that are so straightforward in nature that expert testimony is not required. New Jersey courts have dispensed with the expert testimony requirement in cases where attorneys have failed to fulfill the most basic obligations. See, e.g., Sommers, supra, 287 N.J.Super. at 8-12, 670 A.2d 99 (lawyer entirely failed to submit a legal argument in client's defense); Brizak, supra, 239 N.J.Super. at 431-32, 571 A.2d 975 (attorney failed to protect client's claim against the running of the statute of limitations); Stewart v. Sbarro, 142 N.J.Super. 581, 591-92, 362 A.2d 581 (App.Div.) cert. denied 72 N.J. 459, 371 A.2d 63 (1976) (lawyer sacrificed client's creditor priority by failing to ensure that a bond and mortgage were properly recorded). A common thread runs through these cases, namely none of them required the trier of fact to evaluate an attorney's legal judgment concerning a complex legal issue. Where a trier of fact would be put in such a position, New Jersey courts have required expert testimony to be presented. See, e.g., Aldrich, 281 N.J.Super. at 214-15, 656 A.2d 1304 (expert testimony was required where an attorney told sellers of property that they did not need to disclose zoning restriction to buyers because the attorney reasoned that the restriction was invalid). We also note that it is beyond legitimate dispute that no statutes of limitation barred defendant from bringing any suits after discharging plaintiff, and that the only suit that she brought after discharging the firm was dismissed. As a result, defendant cannot say that liability or causation could be matters of common knowledge.
Defendant patently failed to offer a legally sufficient expert opinion, and this failure is fatal to her legal malpractice claim. Accordingly, the trial court's refusal to permit defendant to offer a summation on that defense for which no evidence was presented was proper.

III
Defendant argues that the judge who presided over the trial of plaintiff's fee claim was obligated to overrule the prior order of another judge dismissing her legal malpractice claim. This argument is without merit.
While defendant correctly points out that the trial court has the inherent power to review, revise, reconsider or modify its own interlocutory orders, such a review rests within the sound discretion of the court and is to be exercised in the "interest of justice." R.4:42-2. The earlier order clearly dissatisfied defendant, but *254 she has not articulated how or why the interests of justice required the trial court to reconsider the prior judge's ruling.
R. 4:42-2 requires that to "the extent possible, application for reconsideration shall be made to the trial judge who entered the order." We have observed that:
[w]e expressly disapprove the practice of so called "lateral appeals" whereby litigants dissatisfied with an interlocutory order entered by one trial judge seek its overturn or modification by motion to another trial judge.

[Lewis v. Preschel, 237 N.J.Super. 418, 422, 568 A.2d 106 (App.Div.1989) ].
Here, defendant has not presented any reason why she did not seek, pursuant to the requirements of R. 4:42-2, to apply again for reconsideration.
Even if we were to construe defendant's submission as requesting this court to review the March 3, 2000, order of the other judge, and to consider it as such, the court properly entered that order. Our Supreme Court has enunciated the following standard for summary judgment:
We hold that when deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995) ].
On March 3, 2000, Judge Fast dismissed defendant's counterclaim on the basis that she could not sustain her claims of legal malpractice without an expert to testify or to opine as to liability. The March 3, 2000, decision was appropriate and supported by case law.
Defendant's counterclaim against plaintiff alleges professional negligence regarding the firm's handling of various matters for her. Specifically, defendant claims that plaintiff committed legal malpractice when it failed to file some lawsuits she requested. Because of this alleged negligence, defendant claims that she has suffered damages. Defendant however, produced no expert testimony to support her claim that the damages she allegedly suffered were proximately related to plaintiff's alleged negligent conduct.
Thus, after oral argument, the court determined that, absent expert testimony, defendant could not establish the requisite elements of a legal malpractice claim, mainly, breach of the standard of care and proximate causation. As a result, it dismissed the counterclaim.
As already noted, the trial court correctly dismissed defendant's claim because she produced no competent expert testimony to support her allegations. Another judge had correctly analyzed the issues and the facts of this matter and determined that this was a case in which expert testimony was required to help the jury, holding:
There is no question in my mind that the issues presented here on this claim of legal malpractice, as presented in the counterclaim by the defendant doctor, is a matter of analysis, opinion, interpretation, as to liability, against, as distinguished from damages.
The court, after considering a full factual record, properly applied the law in dismissing defendant's counterclaim for legal malpractice. It recognized that defendant was not competent to supply the requisite standard of care of an attorney in the *255 position of plaintiff. Defendant also had no expert testimony to establish proximate causation between the alleged breach of duty and damages. Absent expert testimony on these issues, as the law requires, the court acted appropriately in dismissing defendant's claims for professional negligence.

IV
Defendant further argues that the trial judge erred in awarding counsel fees in reliance on Rule 4:58, the offer of judgment rule. Plaintiff offered judgment in the amount of $14,300, which was not only not accepted by defendant but was actually "objected" to in a submission to the court by defendant. The trial judge properly awarded fees pursuant to the offer of judgment rule R. 4:58-1, et seq., since the trial damages award of $15,205 exceeded the offer of judgment of $14,300.
The offer of judgment rule and, in particular, R. 4:58-2, "consequences of non-acceptance of claimant's offer," as in effect at times relevant to plaintiff's claim, provided in pertinent part:[1]
If the offer of a claimant is not accepted and the claimant obtains a verdict or determination at least as favorable as the rejected offer, the claimant shall be allowed, in addition to costs of the suit, eight percent interest on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, and also a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance.
The offer-of-judgment rule is "designed particularly as a mechanism to encourage, promote, and stimulate early out-of-court settlement of negligence and unliquidated damages claims that in justice and reason ought to be settled without trial." Crudup v. Marrero, 57 N.J. 353, 357, 273 A.2d 16 (1971). Consistent with this purpose, the rule imposes financial consequences on a party who rejects a settlement offer that turns out to be more favorable than the ultimate judgment.
We have not been referred by the parties to any authority in New Jersey that deals precisely with the issue of whether a claimant that is a pro se law firm seeking to collect its fees can be awarded fees under the offer of judgment rule against the party who has rejected a settlement offer under circumstances that would qualify the claimant to an award of an attorney's fee if it had been represented by an attorney. There is, however, authority on somewhat related issues that is useful.
First, we note that two New Jersey trial courts have considered the right of an attorney representing himself pro se to receive attorney's fees, not under the offer of judgment rule but under the frivolous litigation statute and its provision for awarding attorney's fees to the successful party. N.J.S.A. 2A:15-59.1(c). These courts reached opposite conclusions. In Asaadi v. Meltzer, 280 N.J.Super. 68, 654 A.2d 506 (Law Div.1994), the court held that an attorney representing himself pro se was not entitled to attorney's fees. In Deutch & Shur, P.C. v. Roth, 284 N.J.Super. 133, 663 A.2d 1373 (Law Div. 1995), however, the court rejected the Asaadi analysis and held that the prevailing pro se attorney was entitled to recover reasonable attorney's fees.
*256 In Asaadi, the court interpreted the frivolous litigation statute to require that monies actually be paid out to an attorney in order for the pro se litigant to recover attorney's fees. The court concluded that a pro se attorney who did not in fact incur attorney's fees could not recover for the value of the time spent by that attorney in defending a frivolous claim.
Deutch & Shur, in refusing to follow Asaadi, concluded that the purposes of the frivolous litigation statute militated in favor of an award of attorney's fees to a pro se attorney. The court there reasoned that the legislature had merely failed to consider the possibility of a pro se attorney representing himself in the litigation at the time that it drafted the legislation. The court appropriately pointed to the punitive purpose of the statute to deter frivolous litigation and the absence of any reason why the Legislature would distinguish between pro se attorney litigants and those represented by attorney.
We are persuaded that under the frivolous litigation statute, Deutch & Shur represents the sounder view. This does not end our inquiry, however, since as we have observed, the award appealed from was not made under that statute but under the offer of judgment rule. In addition to referring to practice under the frivolous litigation statute, it is also appropriate for us to look elsewhere, namely to R. 1:4-8. In the event of frivolous litigation, that Rule makes a "pro se party" responsible for certain sanctions. R. 1:4-8(a); see Pressler, Current N.J. Court Rules, comment (g) to R. 1:4-8 (2002).
We acknowledge that the purposes of frivolous litigation sanctions and of the imposition of costs for failure to accept an offer of judgment are not identical. Sanctionable frivolous litigation has no justification, and the deterrent should be strong. The need for a forceful deterrent for declining a settlement offer, while considerable, is not as compelling. One may act in complete good faith and with sound reasons when rejecting a settlement offer, yet be surprised by a trial's outcome and exposed to R. 4:58-2 sanctions.
We observe further that one standard definition of an "attorney" is, "[s]trictly, one who is designated to transact business for another; a legal agent...." Black's Law Dictionary (7th ed.1999). Here, Brach Eichler was not acting for another but for itself.
The source Rule was "intended as a procedural mechanism to facilitate the settlement of cases." Pressler, Current N.J. Court Rules, comment to R. 4:58 (2002); see also, Crudup v. Marrero, supra, 57 N.J. at 361, 273 A.2d 16. The present form of the Rule has carried forward that original purpose. In our view, the Rule's purpose would best be fulfilled in these circumstances by allowing the pro se attorney to recover attorney's fees under R. 4:58-2. The provision in that rule that the fee award "shall belong to the client ..." does not preclude this result. All it means is that Brach Eichler, which was it own client, as the client gets to keep the fees awarded. Thus, when a pro se litigant is a law firm earning its income from the private practice of law, we see no reason why, for purposes of R. 4:58-2, that firm should not be entitled to the recovery of attorney's fees under the offer of judgment rule for the reasonable value of the time expended by the firm when it is compelled to proceed to trial. We quote the rationale expressed in Deutch & Shur, supra:
An attorney representing himself expends time. The old adage that "Time is money" has no greater validity than in an attorney's world. The time spent by an attorney defending a frivolous claim could have been spent working on a matter for a paying client.

*257 [284 N.J.Super. at 141-142, 663 A.2d 1373.]
We conclude that this rationale likewise applies when the attorney has had to spend time unnecessarily presenting a meritorious claim that should have been settled under R. 4:58-2 and that an award of counsel fees to the pro se law firm pursuant to that Rule is clearly appropriate in the circumstances of this case. We thus uphold the award of attorney's fees to plaintiff for the reasonable value of the time the firm expended during trial as a consequence of defendant's non-acceptance of the settlement offer.

V
The judgment and order appealed from are affirmed.
NOTES
[1] The Rule was thereafter amended effective September 5, 2000 in respects not pertinent to this appeal.