**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1657-14T2

CATHY MITCHELL,

    Plaintiff-Appellant,

v.

GERALD SKEY, S. BHATTACHARYA,
SKEY BHATTACHARYA LAW FIRM,[1]

    Defendants-Respondents.

_____

Argued telephonically January 17, 2017 —
Decided May 12, 2017

Before Judges Lihotz, Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-
0486-12.

Cathy Mitchell, appellant, argued the cause
pro se.

Patrick J. McCormick argued the cause for
respondents (Hardin, Kundla, McKeon & Poletto,
P.A., attorneys; Mr. McCormick, on the brief).

PER CURIAM

_____

[1] W.S. Gerald Skey improperly plead as "Gerald Skey", Supti
Bhattacharya improperly plead as "S. Bhattacharya" and Skey &
Bhattacharya, LLC, improperly plead as "Skey Bhattacharya Law
Firm".

Plaintiff Cathy Mitchell appeals from the December 1, 2014 Law Division order, which granted the summary judgment dismissal of her legal malpractice action against defendants W.S. Gerald Skey, and the law firm of Skey & Bhattacharya, LLC (collectively defendants). Plaintiff's complaint alleged defendants negligently represented her in the divorce proceedings she initiated against her husband, Richard Miller. The Law Division dismissed plaintiff's complaint because she failed to provide a report from an expert who would testify as to the applicable standard of care, and explain how defendants deviated from that standard with resulting harm to plaintiff. Following our review of the record and the parties' briefs, we affirm.

## I.

We begin with a brief summary of the underlying divorce litigation between plaintiff and her now former husband.[2] Plaintiff and Miller are both practicing attorneys. They married in October 1993, and had two children, born in 1995 and 1999; Miller also had two emancipated children from a prior marriage. The parties maintained an affluent lifestyle, including luxury

---

[2] Our opinion entered on plaintiff's appeal from her divorce proceedings contains a more detailed account of the divorce litigation. See Mitchell v. Miller, No. A-3756-12 (App. Div. June 11, 2015).

2                                                                    A-1657-14T2

vehicles, international family vacations, frequent Broadway shows, and country club memberships.

The parties worked together for the majority of their marriage, moving together into various positions, including in-house counsel with a sporting goods manufacturer, various law firms throughout New Jersey and New York, and their own law firm. Financial documents showed they earned roughly equal salaries throughout the marriage. In 2009, plaintiff received earned income of $136,044 while defendant received earned income of $149,937.

Plaintiff filed for divorce in September 2009. Originally scheduled for August 9, 2010, the trial was adjourned several times for various reasons, including plaintiff changing attorneys three times before trial due to alleged misconduct and conflicts. Trial finally commenced in February 2011 before a Family Part judge, with Skey serving as plaintiff's trial counsel. During the first week of trial, the parties entered into an agreement resolving custody and parenting time issues.[3]

Trial lasted thirteen days. After the tenth day, plaintiff sought an adjournment in order to change attorneys again, asserting

---

[3]  In a certification, Skey said his representation of plaintiff began in November 2010, after plaintiff's third attorney filed a motion to withdraw. Skey said he focused his discovery on the issue of custody. He claimed that by the time he began representing plaintiff, all financial discovery had been completed.

a conflict with Skey because of his conduct, which she characterized as misconduct and cognitive problems. The trial judge denied plaintiff's application, and noted she had not witnessed Skey exhibit any cognitive difficulties or misconduct. The judge concluded that substitution of counsel at that late stage would cause undue delay and unfair prejudice to Miller.

The judge nevertheless offered plaintiff three options: to continue with Skey as trial counsel; to represent herself, as an attorney admitted to practice in New Jersey; or to obtain a new attorney post-trial to prepare a written summation on her behalf. When plaintiff refused to choose one of these options, the judge ordered Skey to continue as trial counsel for plaintiff.

At the conclusion of trial testimony, counsel gave their oral summations on April 13, 2011. Nearly two years later, on March 8, 2013, the trial judge issued a Final Judgment of Divorce (FJOD), accompanied by a seventy-one-page written opinion. In pertinent part, the judge distributed the marital assets equally, and denied plaintiff's requests for alimony, child support, and fee-shifting.[4] The judge found plaintiff's testimony suspect, noting she often evaded questions by answering "I don't know[,]" or "I can't remember[,]" sometimes even before the attorney had finished

_____

[4] Defendant appealed, and we affirmed. Mitchell, supra, (slip op. at 1).

asking the question. The judge further stated she had not "seen one instance of behavior during trial or numerous conferences in chambers and via telephonic conferences" that caused her concern regarding Skey's ability to represent plaintiff. Rather, she believed that plaintiff raised the issue because it was "clear that plaintiff simply did not like how the trial was going."

In February 2012, over a year before the Family Part judge issued her decision, plaintiff filed this malpractice action against defendants.[5] Plaintiff alleged Skey failed to depose Miller until a week before the start of the divorce trial; failed to obtain Miller's bank records until the middle of trial; failed to obtain Miller's billing records because Skey waited until the middle of trial to subpoena them, only to have the subpoena quashed by the court; and failed to properly prepare materials, witnesses, and other evidence to allow for the possibility of settlement under "favorable terms."

In April 2012, plaintiff filed an affidavit of merit (AOM). Following a May 2012 hearing, the court deemed the AOM insufficient and gave plaintiff sixty days to file a new one. Plaintiff thereafter filed a second AOM.

On August 8, 2012, defendants filed a motion to dismiss

---

[5] Plaintiff's complaint also named Skey's law partner, Supti Bhattacharya, as a defendant.

plaintiff's complaint with prejudice, challenging the sufficiency of the replacement AOM. On September 28, 2012, the court granted the motion as to Bhattacharya only — because the replacement AOM did not address her — but denied the motion as to Skey and his law firm.

In January 2013, the remaining defendants filed a motion to dismiss plaintiff's complaint without prejudice based on her failure to provide discovery. The same month, plaintiff filed a motion to compel certain depositions. In April 2013, defendants filed a motion to set a deadline for furnishing expert reports. In mid-May 2013, plaintiff filed a motion for summary judgment as to liability only. On June 14, 2013, defendants filed a motion for summary judgment based on plaintiff's failure to serve a report from a legal malpractice expert. Unexplainably, these motions went undecided, and the case lay dormant until June 12, 2014, when defendants renewed their summary judgment motion based on plaintiff's failure to provide an expert report.

On June 27, 2014, plaintiff filed a motion for a stay, or in the alternative, for an extension of the discovery period to permit her to serve an expert report. On October 20, 2014, plaintiff filed a motion to extend discovery and for an additional sixty days to file her expert report.

On October 28, 2014, the court denied both summary judgment

motions as well as plaintiff's motion for a stay. The court also denied plaintiff's motion to compel depositions and defendants' motion to dismiss the complaint without prejudice, and gave plaintiff until December 1, 2014, to serve her expert report. The court entered corresponding orders the same date, including an order directing that any depositions sought by plaintiff not occur until she served answers to interrogatories, responded to certain document requests, and submitted to a deposition; an order denying defendants' motion to dismiss the complaint without prejudice; an order denying plaintiff's motion for summary judgment on liability; an order denying plaintiff's motion for a stay pending the decision by the Appellate Division in the divorce action; and an order denying plaintiff's motion for a protective order and to quash defendants' subpoena of the divorce case file held by a non-party company, New Jersey Legal.

On December 1, 2014, after plaintiff failed to serve her expert's report, the motion court issued an oral decision granting defendants' motion for summary judgment. The court entered a corresponding order and dismissed plaintiff's complaint the same day. This appeal followed.[6]

---

[6] In addition to the December 1, 2014 dismissal order, plaintiff also appeals from the October 28, 2014 orders denying plaintiff's motions.

II.

Review of a ruling on summary judgment is de novo, and we apply the same legal standard as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

When determining whether there is a genuine issue of material fact, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co of Am., 142 N.J. 520, 540 (1995). We afford no deference to the trial court's legal conclusions. Nicholas, supra, 213 N.J. at 478.

Plaintiff contends no expert was required in this case because Skey's negligence was obvious and a matter of common knowledge, such that a juror of average intelligence could understand. We disagree. Plaintiff's malpractice claim was sufficiently complex to require expert testimony regarding the accepted standard of care and how Skey allegedly failed to meet that standard.

Plaintiff told the court at the October 2014 hearing that her "expert report would be about everything." By "everything," she apparently was referring to the alleged conflict of interest that arose when Skey agreed to continue to represent her after she had notified him of her intention to file a malpractice action against him because he allegedly failed to timely obtain Miller's billing and bank records. Plaintiff also argues that Skey committed malpractice by not sending information to a forensic accountant she had retained.

In denying plaintiff's motion for summary judgment at the October 28, 2014 hearing, the motion court stated:

> There are cases that are so obvious. They're few and far between, especially in professional malpractice . . . . You know, an attorney takes money to file a complaint and just never files the complaint or blows the statute of limitations . . . but that's not this case. . . . This case has more nuances to it. . . . It's not even whether or not, or why subpoenas weren't sent earlier, or things that weren't requested, whether an adversary promised something and didn't live up to that promise, . . . so I don't think it's . . . such a clear cut case of . . . alleged attorney malpractice, that it would fall into the rule that does require expert testimony.
>
> Also, there does need to be the issue of causation . . . . You have to have a connection between the causation [sic].
>
> Now I'm not saying you can't prove that, but you would need expert testimony in this type of a case to prove that

> . . . . So, again, you don't have an expert on proximate causation. You don't have an expert on whether or not . . . this was malpractice for Mr. Skey if he decided not to use a certain expert . . . or not to question your ex-husband in a certain manner. That would all require an expert.

Generally, the admission or exclusion of expert testimony is committed to the sound discretion of the trial court. Townsend v. Pierre, 221 N.J. 36, 52 (2015). In reviewing a summary judgment determination based on an evidentiary issue, like the trial court, we must first identify the evidentiary issue and then make the summary judgment determination. Id. at 53.

The usual principles of negligence apply to a legal malpractice action. Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996). Thus, a plaintiff must establish by competent proof an attorney-client relationship creating a duty of care upon the attorney, breach of that duty, and proximate causation. Ibid. Generally, a lawyer is required to exercise the degree of reasonable knowledge and experience that lawyers of ordinary ability and skill possess and exercise. Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo, 345 N.J. Super. 1, 12 (App. Div. 2001). That obligation encompasses "the taking of any steps reasonably necessary in the proper handling" of a case, including the duty of investigating the facts, formulating a litigation strategy and filing within a reasonable

time anything necessary to effectuate recovery. <u>Kranz v. Tiger</u>, 390 <u>N.J. Super.</u> 135, 147 (App. Div.) (quoting <u>Passanante v. Yormark</u>, 138 <u>N.J. Super.</u> 233, 239 (App. Div. 1975), <u>certif. denied</u>, 70 <u>N.J.</u> 144 (1976)), <u>certif. denied</u>, 192 <u>N.J.</u> 294 (2007).

The AOM Statute (AMS), <u>N.J.S.A.</u> 2A:53A-26 to -29, requires a plaintiff in a legal malpractice action to file an affidavit of merit. However, an AOM is not required in a case where the "common knowledge" doctrine applies and obviates the need for expert testimony to establish a deviation from the standard of care. <u>Hubbard v. Reed</u>, 168 <u>N.J.</u> 387, 390 (2001); <u>Bender v. Walgreen E. Co.</u>, 399 <u>N.J. Super.</u> 584, 590 (App. Div. 2008). The doctrine applies where jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of an expert's specialized knowledge. <u>Bender</u>, <u>supra</u>, 399 <u>N.J. Super.</u> at 590. Such a situation is where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience. <u>Ibid.</u>

One of the requirements for the admission of expert testimony is that the intended testimony must concern a subject matter beyond the ken of the average juror. <u>State v. Kelly</u>, 97 <u>N.J.</u> 178, 208 (1984). Generally, expert testimony is required in cases of professional malpractice where the matter to be addressed is so

11

esoteric that the average juror cannot form a valid judgment as to whether the conduct of the professional was reasonable. Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). However, depending on the facts of a given case, a layperson's common knowledge may be sufficient to permit a finding that the duty of care had been breached. Ibid.

Generally, because the duties a lawyer owes his or her client are not known by the average juror, expert testimony is required to set forth that duty and explain the breach. Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div.), certif. denied, 213 N.J. 534 (2013). However, in "rare cases," expert testimony is not required in a legal malpractice action where the duty of care to the client is so basic that it may be determined by the court as a matter of law. Ibid. In addition, expert testimony may not be required to establish proximate cause in a legal malpractice case where the causal relationship between the attorney's malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge. Sommers, supra, 287 N.J. Super. at 11.

"A common thread runs through these cases, namely none of them required the trier of fact to evaluate an attorney's legal judgment concerning a complex legal issue." Brach, Eichler, supra, 345 N.J. Super. at 13. New Jersey courts have dispensed with the

expert testimony requirement where attorneys have failed to fulfill the most basic of responsibilities, such as failing to submit a legal argument, not properly recording a bond and mortgage, and letting the statute of limitations run. Id. at 12-13.

In Buchanan, supra, 428 N.J. Super. at 280-82, the plaintiff had been sued for legal malpractice and sought coverage from his insurer. The insurer denied coverage after the attorney assigned to defend the plaintiff in the malpractice matter informed the insurer the plaintiff committed bankruptcy fraud. Id. at 283. The insurer brought a declaratory judgment action, and the court determined that the plaintiff was, in fact, entitled to coverage. Ibid.

The plaintiff then filed a malpractice action against the attorney and firm that had represented him in the underlying malpractice action. Ibid. In granting the defendants' motion for summary judgment, the trial court determined that the plaintiff was required to provide an expert report, and had not done so. Id. at 284. On appeal, the defendants argued that the defendant attorney had merely provided the insurer with his "candid assessment" of the plaintiff's potential liability in the underlying lawsuit. Id. at 289. The plaintiff argued that the attorney violated his duty to provide him with undivided loyalty.

<u>Ibid.</u> Faced with these arguments, we held that without the assistance of expert evidence, a jury would not have been able to determine the duty of care that applied. <u>Ibid.</u>

In <u>Brizak v. Needle</u>, 239 <u>N.J. Super.</u> 415, 417-18 (App. Div.), <u>certif. denied</u>, 122 <u>N.J.</u> 164 (1990), the plaintiff alleged that her attorney had committed malpractice because he failed to file a medical malpractice action prior to the expiration of the statute of limitations. The attorney maintained that he did not believe there was a limitations problem because he thought that the claim would not accrue until the plaintiff found a doctor who believed her treatment had been malpractice. <u>Id.</u> at 425.

We held that the plaintiff was not required to produce an expert in support of her claim because there was no need for an expert to "refute defendant's obviously incorrect belief that the limitations period did not begin to run until an expert medical opinion was obtained." <u>Id.</u> at 429. Moreover, the evidence in support of the claim "was within the grasp of common understanding." <u>Id.</u> at 431. This evidence included the defendant's failure to obtain the medical opinion of someone with the appropriate expertise who would be willing to testify, and his failure to obtain x-rays and office records. <u>Id.</u> at 432. However, the court added:

> We do not want to leave the wrong impression. Although expert opinion is not

A-1657-14T2

necessary to establish the negligence of a[n] . . . attorney who fails to conduct any investigation of his client's claim, where the attorney has undertaken some investigation, a jury will rarely be able to evaluate its adequacy without the aid of expert legal opinion. We are convinced that this is one of those rare cases. We nevertheless caution that a plaintiff's attorney who litigates a legal malpractice claim without the opinion testimony of a legal expert unnecessarily exposes his client to a serious risk of dismissal.

[Ibid.]

In Aldrich v. Hawrylo, 281 N.J. Super. 201, 204 (App. Div. 1995), appeal dismissed, 146 N.J. 493 (1996), the plaintiffs claimed that their attorneys committed malpractice by advising against disclosing to a purchaser the existence of a setback restriction, imposed as a condition of a variance grant, because the restriction was invalid. We reversed the trial court's determination that expert testimony was not needed. Id. at 213-15. We held that because the attorneys conducted an extensive investigation into the question prior to rendering their opinion, a jury could not properly evaluate the adequacy of the investigation or the opinion without the aid of expert legal testimony. Id. at 214.

In Brach, Eichler, supra, 345 N.J. Super. at 11, 14, the defendant physician sought to raise a legal malpractice counterclaim in an action brought against him to recover unpaid

legal fees. She alleged her former attorneys failed to file, or delayed filing, certain lawsuits. Id. at 11. The trial court denied her request because she failed to supply an expert report. Id. at 11-15. We affirmed because the issues raised by the counterclaim were matters of "analysis, opinion, [and] interpretation." Id. at 15.

In Sommers, supra, 287 N.J. Super. at 5, a tax assessor brought an action to affirm her tenured status and to receive back pay. The case settled during trial, with the plaintiff tax assessor receiving back pay but surrendering her tenure claim. Ibid. The plaintiff then brought a malpractice action against her trial attorney alleging inadequate case preparation, failure to communicate more favorable settlement offers to her, and misrepresentation of the strength of the municipality's proofs on the tenure issue. Id. at 7. As a result of this malpractice, the plaintiff claimed she accepted an inadequate settlement. Id. at 8.

The trial court granted summary judgment to the defendant attorney because the plaintiff failed to produce an expert to establish the standard of care and breach of that standard. Id. at 9. We reversed the entry of summary judgment, stating:

> Stripped to its essentials, plaintiff asserts that she accepted a settlement offer far inferior to one previously tendered because her attorney inadequately prepared the

16

case, failed to submit a legal argument to support her tenure claim and misrepresented the state of the case to her. These issues do not require a jury to speculate whether [the attorney] selected the appropriate authorities to advance plaintiff's legal position or to evaluate [the attorney's] judgment in recommending a settlement offer to her. Rather plaintiff asserts that no work was done to advance her case and that [the attorney] knew the shortcomings of the Borough's case but misrepresented the strength of its defense to her back pay claim to induce her to settle the case and collect his fee.

. . . .

We conclude that [the plaintiff] was not required to have an expert opine that [the attorney] should have briefed an issue and that the failure to do so was a breach of that duty to plaintiff. Similarly, [the plaintiff] was not obliged to have an expert opine that [the attorney] was required to report the settlement discussion accurately and recommend a disposition of the case based upon an accurate rendition of each party's positions. Furthermore, [the plaintiff] was not required to produce an expert to opine that, if she had been told that the town had no defense to her back pay claim, she would have changed her settlement position.

[Id. at 11-12 (footnote omitted).]

The appeal under review is not one where an attorney did no work and made misrepresentations to plaintiff, as in Sommers, nor where an attorney failed to file an action in time because of an "obviously incorrect belief" regarding the statute of limitations, as in Brizak. Rather, Skey's alleged failure to obtain billing and banking records in a timely manner, is more akin to the

question of the adequacy of an investigation, as in <u>Aldrich</u>, and the alleged conflict of interest is similar to the divided loyalty charge in <u>Buchanan</u>.

Therefore, we conclude plaintiff's malpractice allegation was not so "readily apparent" and the alleged breach of the duty of care not so "basic" as to warrant holding that the trial court erred in determining this was not one of those "rare cases" where an expert was not required. In addition, to the extent Skey continued to represent plaintiff after she advised she intended to file a malpractice action against him constituted a basis for her claim, such allegation raises a relatively "complex legal issue," not amenable to determination without the assistance of expert testimony.

Our conclusion that plaintiff was required to provide expert testimony to prove her legal malpractice case renders moot plaintiff's appeal of the denial of her motion for summary judgment. Plaintiff's remaining appellate arguments, including her challenge to the other orders entered on October 28, 2014, lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                        A-1657-14T2