**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1417-20

PASHMAN STEIN WALDER
HAYDEN, P.C.,

    Plaintiff-Respondent,

v.

JACQUELINE CHASSMAN,

    Defendant-Appellant.

_____

Argued January 25, 2022 – Decided March 9, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2847-19.

Jacqueline Chassman, appellant, argued the cause pro se.

Bruce J. Ackerman argued the cause for respondent (Pashman Stein Walder Hayden, PC, attorneys; Bruce J. Ackerman, on the brief).

PER CURIAM

Defendant appeals from the trial court's January 14, 2021 order granting summary judgment to plaintiff on its claim for unpaid legal fees. We affirm.

Defendant represented herself in an underlying matter she filed against her condominium association. After the court granted summary judgment to the defendants in the underlying case, defendant contacted plaintiff to represent her in the appeal.

Bruce Ackerman, a partner with plaintiff, emailed defendant regarding the representation. The email stated, in pertinent part:

> The meeting and review would require an initial payment of $2,500 at our meeting, which would be applied towards your appeal retainer of $15,000. So that there is no misunderstanding, the appeal retainer is not a flat fee but an initial payment, and the appeal may cost far more depending on how it goes. I can explain more when we meet.

Defendant met with Ackerman in December 2016 and signed a retainer agreement. The agreement was accompanied by an engagement letter intended to "confirm the terms of [plaintiff's] engagement and . . . billing arrangements . . . ." The letter indicated Ackerman's $475 hourly rate was "subject to adjustment by the firm from time to time," and it was not plaintiff's "practice to notify clients of such changes other than through monthly billings." It further indicated plaintiff would "bill for out-of-pocket disbursements and certain other

expenses and service charges," and would require "clients to pay substantial disbursements in advance or to pay them directly to outside vendors." The engagement letter also stated that plaintiff "expect[ed] to bill on a monthly basis", "[a]ll bills are payable upon receipt[,] and payment is not contingent upon the outcome of a matter." Finally, the letter informed defendant that plaintiff "would seek to consult [defendant] in advance before undertaking any major new task in [its] representation, and to keep [defendant] informed where our fees, disbursements and other charges stand on an ongoing basis."

In addressing the retainer agreement, the engagement letter specified plaintiff was "requiring a retainer of $15,000.00 at the present time" and expected to "expend approximately $2,500 of that amount to review the file and determine the nature of the issues that can be appealed, if at all." Moreover, "based upon that review," plaintiff could "determine that [it] cannot proceed in the matter depending upon the status and issues ruled upon, or that the nature of the work anticipated is much more than originally planned, in which event [defendant] will be required to pay an additional amount to be mutually agreed upon . . . ." If no agreement could be reached, plaintiff would "terminate [its] representation . . . and refund to [defendant] the remaining balance of the initial retainer . . . ." Plaintiff further reserved the right to "require the replenishment

3

of the retainer, and [defendant agreed] to replenish the retainer when it falls below $2,500." And the "retainer requirement may increase from time to time as the level of service needs changes."

Prior to receiving plaintiff's first invoice, defendant emailed Ackerman in January 2017, requesting an estimate for "the entire cost" of the appeal. Ackerman responded: "I cannot yet tell you what the whole appeal will cost, but I expect it to exceed the retainer somewhat. How much is 'somewhat' I cannot yet determine." Defendant replied that she was "limited to the $15,000" and would "have to let go" unless plaintiff agreed to charge no more than that amount. Ackerman responded, reminding defendant he had "told [her] from the start that [he] could not cap the cost in any way" and that while he did not expect the total cost to "exceed the retainer by 'a lot'," it would "likely exceed it" once he wrote a reply brief and argued the case. The email exchange then ended with defendant stating: "Yes, . . . please continue with the appeal and do your best."

Plaintiff sent defendant a detailed invoice each month until defendant stopped making payments in August 2017. In December 2017, Ackerman emailed defendant to "remind [her] to please restart monthly payments towards [her] legal fee arrears." Defendant responded that she was "unable to make an additional payment at this time." She asserted that although Akerman informed

her the cost of the appeal would "be somewhat over the initial payment of $15,000.00", the actual amount charged—approximately $21,000—"came as a seriously painful surprise . . . ." Defendant stated that "[o]nce the appeal is concluded," she would "resume scheduled payments."

The case was scheduled for oral argument before this court on May 1, 2018. As of April 2018, defendant had an unpaid balance of $14,757.44. Accordingly, on April 3, Ackerman emailed defendant and asked her to "please show some good faith" by making even a "small monthly payment[] . . . ." Defendant responded, asserting she had been misled as to the cost of the appeal and was "unable to make payments at this time." The next day, Ackerman replied, disputing defendant's assertion that she was misled; he also advised defendant that unless she was willing to "commit now to some payment either weekly or monthly," plaintiff could not "represent [her] any longer" in the appeal and the firm would have to initiate collection proceedings. Ackerman sent defendant another email a few days later, advising he "strongly recommend[ed]" defendant not argue the appeal herself but stating that "[u]ltimately, that is your decision if you wish to argue the case."

The following day, defendant emailed Ackerman and informed him she had "determined that it is best for [him] to present the oral arguments." She also

5

requested that he "reduce the $475.00 hourly fee and not charge" for the time he spent addressing certain procedural errors in the opposing party's brief. Ackerman responded later that day and indicated he was "agreeable" to a ten percent discount, but only if defendant made a commitment to "make partial payments on a regular basis towards [her] balance due."

In her reply, defendant requested an estimate of the time Ackerman would require preparing for and attending oral argument. He estimated he would require three to five hours "to prepare for oral argument, [two] hours at the court, . . . and around [three] hours driving round trip." He also explained in a subsequent email that he only charged driving time "one way."

On April 11, defendant replied and stated: "I agree to the charges and time as provided in this chain of emails regarding oral arguments . . . . I will make monthly payments." After Ackerman asked defendant to "provide an amount and date when" she would begin to pay each month, she clarified that she would make a payment of $100 on April 18 and "monthly payments of $75.00 by the 21st of each following month."

Defendant paid plaintiff $100 on April 18. In the invoice issued following oral argument, plaintiff charged defendant $4845—reduced to $4095—more than the agreed-upon discount. Defendant made a payment of $75 on May 31.

6

On June 7, 2018, this court issued its opinion in the underlying matter, affirming the grant of summary judgment to defendant's adversary. Chassman v. Longview at Montville Condo. Ass'n, Inc./Bd. of Trs., No. A-1660-16 (App. Div. June 7, 2018) (slip op. at 1). Thereafter, defendant made only two more payments—$50 each in September and November 2018.

For the first time, defendant also began expressing dissatisfaction with plaintiff's representation of her in the appeal. For instance, on January 6, 2019, defendant emailed Ackerman, stating she believed that the "oral argument [he] presented in court was very weak and [did] not reflect the amount of time recorded on the bill." In an email sent a few days later, defendant told Ackerman she thought "$21,375.00 covers the time and work you spent on the briefs related to the appeal" and she did not intend to pay anything more.

Plaintiff filed a collection action against defendant for the unpaid legal fees. Plaintiff sought a total of $18,677.44—$14,682.44 for unpaid fees accrued before April 2018 and $3,995.00 for fees after that date. At the close of discovery, plaintiff moved for summary judgment.

The trial court granted plaintiff's motion in a written opinion and order on January 14, 2021. The court found there were "no genuine issues of material fact", plaintiff had "established an agreement to pay the balance owed . . . , and

7

the monthly statements constitute[d] a book account and an account stated." The judge noted that defendant's arguments in opposition to the motion "relate[d] solely to the value of the time and effort made on her behalf." And that defendant had not contested the invoices in which "the services rendered were detailed at length" until she "determined not to pay any longer . . . using bald contentions."

Therefore, the court found that because the "April 2018 agreement is clear, and leaves no doubt as to what the parties agreed to at that time", once defendant defaulted under it, "[p]laintiff became entitled to judgment on [the] account balance, and . . . summary judgment is fully warranted."

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"If there is no genuine issue of material fact, [this court] must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial judge's conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Defendant contends on appeal that the trial court erred in granting summary judgment because disputed issues of material fact existed regarding the reasonableness of the time Ackerman expended during her appeal, the effectiveness of the rendered services, and plaintiff's compliance with the ethical requirements for lawyer-client contracts. For example, she notes that Ackerman billed 7.4 hours of "prep time" for oral argument, his argument before this court was "contrary to the premise of the appeal" and did not "incorporate any of [defendant]'s suggestions." She further asserts that the December 2016 retainer agreement clearly specified that she would not be charged "a lot" more than $15,000, and that plaintiff unethically "compelled" her to agree to the payment schedule outlined in the April 2018 email thread, violating her trust.

"It is well-established that '[a] lawyer is required to maintain the highest professional and ethical standards in his dealings with his clients.'" In re Humen, 123 N.J. 289, 299-300 (1991) (quoting In re Gavel, 22 N.J. 248, 262 (1956)).

Given the "unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court." Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009) (internal quotation marks and citation omitted).

"Attorneys and clients can agree to fee arrangements of their choice, provided they do not violate the Rules of Professional Conduct." Balducci v. Cige, 240 N.J. 574, 597 (2020). "The paramount principle guiding every fee arrangement is that '[a] lawyer's fee shall be reasonable.'" Id. at 592 (alteration in original) (quoting RPC 1.5(a)). "The most conventional fee agreement is for a client to pay an attorney on an hourly basis." Id. at 597.

Under RPC 1.5, lawyers have a duty to "present a client the attorney has not regularly represented, in writing, at the time of the retention, all of the fees and costs for which the client will be charged, as well as the terms and conditions upon which the fees and costs will be imposed." Alpert, 410 N.J. Super. at 532. "The client will then be able to make an informed decision as to whether he or she desires to retain the attorney, and the chances for misunderstanding and fraud will be greatly diminished." Ibid.

"Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics." Cohen v. Radio-Elecs. Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 155 (1996). When a fee dispute arises, courts "ordinarily defer to the parties' agreement and the fee charged thereunder if it appears that they meet a prima facie test of fairness and reasonableness." Alpert, 410 N.J. Super. at 538. "If that test is met and the client utterly fails to come forward with anything of substance to rebut the prima facie showing and no expert is produced to challenge the invoice as unreasonable, the court appropriately should enforce the agreement." Ibid.

Here, defendant signed a written retainer agreement after meeting with Ackerman in December 2016. Defendant has presented no evidence demonstrating the agreement failed to meet the standards governing attorney-client contracts. The agreement specified Ackerman's hourly rate and explained he would bill hourly. It also indicated defendant would be billed for "out-of-pocket disbursements and certain other expenses and service charges," and clarified payment was "not contingent upon the outcome of a matter." The agreement required an initial $15,000 retainer and, based on plaintiff's review

11

of the case, defendant could be "required to pay an additional amount . . . ." This figure reflected what Ackerman told defendant during their email correspondence; he quoted her the $15,000 figure and advised it was "not a flat fee but an initial payment, and the appeal may cost far more depending on how it goes."

Moreover, when defendant—prior to receiving her first invoice—asked Ackerman to estimate "the entire cost" of her appeal, he provided greater clarity. He advised: "I expect it to exceed the retainer somewhat. How much is 'somewhat' I cannot yet determine." He further stated that while he did not expect to "exceed the retainer by 'a lot'," he would "likely exceed it" once he wrote a reply brief and argued the case. Defendant encouraged him to "please continue with the appeal and do your best." Thereafter, plaintiff sent defendant monthly invoices with detailed descriptions of services rendered and the amounts charged.

Accordingly, the retainer agreement and defendant's promise to pay in accordance with its terms were valid. Plaintiff complied with its obligations under the Rules of Professional Conduct by providing defendant all the information she needed to make an informed decision. Alpert, 410 N.J. Super. at 532.

The parties' April 2018 agreement to settle defendant's outstanding balance under the retainer agreement is similarly enforceable. Through a series of emails, Ackerman agreed to offer a ten percent discount going forward in exchange for defendant's commitment to monthly payments of $75.00. Defendant did not contest the amount owed, the reasonableness of the fees, or the adequacy of Ackerman's representation. The terms in the April 2018 agreement are unambiguous and thus enforceable. See Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) ("where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.").

In granting plaintiff summary judgment, the trial court correctly held that plaintiff was entitled to recover under theories of "book account and an account stated." Under either theory, account records constitute prima facie evidence as to the account stated. Sears, Roebuck & Co. v. Merla, 142 N.J. Super. 205, 208 (App. Div. 1976). And if the opposing party fails to offer anything in rebuttal beyond bald contentions to dispute the records, the evidence can be sufficient for an award of summary judgment. Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 280-81 (App. Div. 2001).

A-1417-20

Here, defendant unambiguously agreed in April 2018 to make monthly $75 payments towards her outstanding balance in exchange for plaintiff providing a ten percent discount on future charges. Defendant did not contest owing plaintiff $14,857.44, as set forth in the invoices. And it was only after this court denied her appeal that defendant began to express dissatisfaction with plaintiff's services.

Defendant now raises arguments regarding the reasonableness of plaintiff's billing and the effectiveness of its representation. However, defendant requires expert testimony to opine as to the competency of the representation. See Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer and Gladstone, P.C. v. Ezekwo, 345 N.J. Super. 1 (App. Div. 2001), abrogated on other grounds by Segal v. Lynch, 211 N.J. 230, 261-62 (2012). Without such testimony and any evidence countering the reasonableness of the bills, defendant cannot sustain her claims or rebut the prima facie showing of an enforceable agreement. Alpert, 410 N.J. Super. at 538-39. We, therefore, affirm the trial court's order granting plaintiff summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1417-20