52 A.3d 1064

WILLIAM C. BUCHANAN, PLAINTIFF–APPELLANT, v. JEFFREY LEONARD, ESQ. AND MORGAN, MELHUISH, MONAGHAN, ARVIDSON, ABRUTYN & LISOWSKI, ESQS., A PARTNERSHIP, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 11, 2012—Decided October 9, 2012.

 

Before Judges REISNER, YANNOTTI and HOFFMAN.

*Gary E. Stern* argued the cause for appellant.

*Marshall D. Bilder* argued the cause for respondents (*Sterns & Weinroth*, attorneys; *Mr. Bilder*, of counsel; *Mr. Bilder, Jason S. Feinstein*, and *David P. Skand*, on the brief).

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Plaintiff William C. Buchanan (Buchanan) appeals from an order entered by the Law Division on December 16, 2011, which granted a motion by defendants Jeffrey Leonard (Leonard) and Morgan, Melhuish, Arbrutsyn (Morgan Melhuish)[1] for summary judgment and dismissed Buchanan's complaint with prejudice. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings.

I.

We briefly summarize the relevant facts. Earl Kerr and Sherri Kerr (the Kerrs) owned a home in Lambertville and business property in Amwell, New Jersey. Nationscredit had a $129,000 first mortgage and William Wooden (Wooden) had a $85,000 second mortgage on the business property. In April 1992, Buchanan filed a Chapter 13 bankruptcy petition on behalf of the Kerrs. The petition was dismissed because the Kerrs' debts exceeded the limits established for individuals filing Chapter 13 petitions.

On August 21, 1993, Buchanan wrote to the Kerrs and stated that he had advised them they should be filing a Chapter 11 bankruptcy petition rather than a Chapter 13 petition. He stated that the Kerrs would not be eligible to file a Chapter 13 petition if they treated Wooden's claim as "almost entirely unsecured[.]" Buchanan said that he had no experience with Chapter 11 petitions and thought the Kerrs would be "much better served" by an attorney with such experience.

In the August 21, 1993 letter, Buchanan additionally wrote that the Kerrs had declined his advice in part because they would have to pay a "large retainer" to a new attorney. The Kerrs had instead directed him to file a Chapter 13 petition

---

[1] In the complaint, the firm was incorrectly identified as Moran, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski.

showing Mr. Wooden's claim as being secured or almost entirely secured by inflating the value of the garage to $200,000.00 (the assessed valuation for the garage is approximately $135,000.00). I have agreed to do so with the understanding that if the Trustee, the Court, or any other party determines that this petition is in anyway false based upon that that you agree to be responsible for the liability for same, if any.

The liability, if any, would be a petition for sanctions under Federal Rule 11 for bad faith filings. The reason for the bad faith, if applicable, would be that your unsecured debt exceeded $100,000. Chapter 13 Petitions are limited to Petitions for $350,000.00 secured debt and $100,000.00 unsecured [debt].

In March 2000, the Kerrs filed an action against Buchanan in the Law Division, Mercer County, in which they alleged, among other things, that Buchanan had prepared and filed legally deficient Chapter 13 bankruptcy pleadings on their behalf and, as a result, they lost their residence, as well as their business and its property. Buchanan had a professional liability insurance policy issued by Legion Insurance Company (Legion), which retained Morgan Melhuish to represent him in the Kerrs' lawsuit. The firm assigned Leonard to handle the matter. Legion did not raise any issue as to Buchanan's coverage at that time.

In July 2003, Legion was declared insolvent, and the New Jersey Property–Liability Insurance Guaranty Association (NJPLIGA) assumed Legion's obligations. According to Buchanan, NJPLIGA's claims examiners reviewed the file pertaining to the Kerrs' suit against Buchanan but the examiners never asserted that he was not entitled to coverage under the policy, nor did they provide a defense subject to a reservation of rights.

During the course of the litigation, the Kerrs produced an expert report from Marc C. Capone, Esq. (Capone), dated April 28, 2004. In his report, Capone stated that a reasonably competent bankruptcy attorney should have first filed a Chapter 7 bankruptcy petition on behalf of the Kerrs and, after discharge, commenced a Chapter 13 proceeding. Capone stated that this would have allowed Wooden's second mortgage on the business property to be treated as wholly unsecured.

According to Capone, in the Chapter 13 proceeding, the Kerrs would have been discharged of all unsecured debt, including

Wooden's second mortgage. Capone wrote that the Kerrs could have retained the equity in their residence, which could have been used to pay a substantial portion of the IRS debt. The Kerrs also would have been able to avail themselves of a bankruptcy code exemption and retained $30,000 from the sale proceeds of that property, as well as their business property.

Capone stated that, as a result of the course pursued by Buchanan, the Kerrs

had to abandon their residence, thus walking away from valuable equity in the property. The Kerrs also had to manipulate the value of the business property on their Bankruptcy Petition just to appear eligible for the filing of a Chapter 13 [petition] pursuant to 11 *U.S.C.* § 109(e), a manipulation directed by Mr. Buchanan. This resulted in a Chapter 13 plan whereby the [Kerrs] had to pay the second mortgage on the [business] property to William Wooden in the approximate amount of $85,000.00 over a sixty-month period. Ultimately, the [Kerrs] lost both their residence and the business property, their business, did not receive a discharge for any unsecured debt, ... were left with a substantial debt to the IRS and had no remaining assets with which to try to attempt to pay off that debt to the IRS. This is an unfortunate and disastrous result given the assets and the business operations that the Kerrs possessed prior to the filing of the two [Chapter 13 petitions] by Mr. Buchanan.

On April 30, 2004, Leonard provided a copy of Capone's report to NJPLIGA.

On May 28, 2004, Dean G. Sutton, Esq. (Sutton), issued an expert report on Buchanan's behalf. Sutton wrote that the Kerrs had agreed to pursue a Chapter 13 proceeding and were aware that, in order to do so, they had to classify Wooden's second mortgage as almost entirely secured and pay him accordingly. Sutton wrote that the Kerrs had intended to abandon their residential property and therefore were aware that the loss of the property would not affect the taxes they were required to pay.

Sutton opined that the confirmed Chapter 13 plan provided for the satisfaction of the IRS's and Wooden's claims. He stated that the Chapter 13 case was subsequently dismissed because the Kerrs failed to make payments required by the plan. He wrote that the loss of the Kerrs' properties and business was not the result of Buchanan's conduct, but was instead the result of their failure to make the required plan payments.

In April 2005, Leonard completed and submitted to NJPLIGA a form seeking authorization to settle the Kerr litigation. In the form, Leonard noted that before Buchanan filed the second Chapter 13 petition, he had written the letter dated August 21, 1993, to the Kerrs confirming a conversation they had about the bankruptcy case. Leonard wrote that Buchanan had

> agreed to file the second Chapter 13 petition showing that Mr. Wooden's claim was either secured or almost entirely secured by inflating the value of the Kerrs' garage (a business run by Mr. Kerr) to $200,000.00 despite it having an assessed value of only $135,000.00. [Buchanan] agreed to inflate the value of the garage so long as the Kerrs agreed that they would indemnify him for any sanctions imposed for utilizing misleading figures. The Kerrs signed the insured's letter confirming their understanding of the contents of the letter and their agreement that [Buchanan] should proceed as outlined in the letter. **This letter is an admission of bankruptcy fraud by [Buchanan] and [the Kerrs]. If the statute of limitations on the crime had not run, [Buchanan] would be subject to up to [five] years in prison and/or a fine of up to $5,000. If the letter is disclosed at trial, the insured is still subject to discipline, which could include a period of suspension of his license.**

On May 16, 2005, one week before trial in the Kerr litigation, NJPLIGA advised Buchanan that it was withdrawing coverage and would not defend him in the lawsuit. On May 17, 2005, NJPLIGA wrote to Buchanan and stated that the withdrawal of coverage was prompted by his letter of August 21, 1993, "pursuant to which you agreed and in fact did knowingly file a Chapter 13 petition on behalf of the Kerrs containing material misrepresentations of fact."

In its letter, NJPLIGA stated it was declining coverage pursuant to a provision of the policy, which excluded coverage for any claim arising out of dishonest, fraudulent, criminal or malicious acts or omissions. On that day, NJPLIGA commenced an action in the Law Division seeking a declaratory judgment that it was not obligated to provide coverage to Buchanan.

In February 2007, following a bench trial in the declaratory judgment action, the Law Division held that Buchanan was entitled to coverage. Thereafter, Buchanan filed his complaint in this case.

Buchanan alleged that defendants were negligent and careless in their representation of him in the Kerr litigation because they failed to protect his interest, deliberately expressed an opinion contrary to his best interest and violated "any semblance of their duty to maintain" his confidences. He also asserted a claim against Morgan Melhuish for negligent supervision of Leonard, and claims of breach of contract, breach of fiduciary duty, tortious interference with a contract, defamation and unjust enrichment. Defendants filed an answer denying liability.

In November 2011, Buchanan filed a motion for partial summary judgment on his legal malpractice claim. Defendants opposed the motion and filed a cross-motion for summary judgment on all claims in the complaint. Defendants argued that the claims were barred by the litigation privilege; the defamation claim should be dismissed because it had not been asserted in the time required by the applicable statute of limitations, and the legal malpractice claim should be dismissed because Buchanan had not presented an expert report in support of that claim.

The Law Division judge heard argument on the motions and, thereafter, filed a written memorandum of decision dated December 16, 2011, in which he determined that plaintiff's motion should be denied and defendants' motion granted. The judge stated that all of Buchanan's claims failed as a matter of law because they were based on Leonard's statements in the settlement memo, which were covered by the litigation privilege.

The judge also stated that the defamation claim was time-barred because it had not been filed within one year of the publication of the alleged defamatory statements. In addition, the judge determined that the legal malpractice claim failed because Buchanan had not produced an expert report in support of that claim.

The judge entered orders dated December 16, 2011, memorializing his decisions on the motions. This appeal followed.

■■■■■■■■■■■■■■■■■

## II.

■ Buchanan argues that the motion judge erred by determining that his defamation claim was barred by the applicable statute of limitations. He contends that Leonard's statement that he committed bankruptcy fraud is slander per se and a trial should be held to determine the amount of damages to which he is entitled.

We are satisfied that the motion judge correctly determined that Buchanan's defamation claim was time-barred. *N.J.S.A.* 2A:14–3 states that "[e]very action at law for libel or slander shall be commenced within [one] year next after the publication of the alleged libel or slander."

Here, Buchanan alleges that he was defamed by statements in Leonard's settlement memo, which was sent to NJPLIGA on April 25, 2005. The complaint in this matter was not filed until January 6, 2011. As defendants note, Buchanan was well aware of Leonard's settlement memo and he filed his complaint in the matter long after the time required by *N.J.S.A.* 2A:14–3.

We therefore affirm the grant of summary judgment to defendants on Buchanan's defamation claim. In view of that determination, we need not consider Buchanan's contention that Leonard's statements constitute slander per se.

## III.

Buchanan next argues that motion judge erred by concluding that his claims are barred as a matter of law because Leonard's statements in the NJPLIGA settlement memo were protected by the litigation privilege.

■■■■■ "The litigation privilege generally protects an attorney from civil liability arising from words he has uttered in the course of judicial proceedings." *Loigman v. Twp. Comm. of Middletown,* 185 *N.J.* 566, 579, 889 *A.*2d 426 (2006). The privilege "protects attorneys not only from defamation actions, but also from a host of other tort-related claims." *Id.* at 583, 889 *A.*2d 426.

■ The litigation privilege shields persons from liability arising from "'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Id.* at 585, 889 *A.*2d 426 (quoting *Hawkins v. Harris*, 141 *N.J.* 207, 216, 661 *A.*2d 284 (1995)).

Our courts have not specifically addressed the question of whether the litigation privilege protects an attorney from claims by his client. Our Supreme Court has noted, however, that the privilege does not protect attorneys from discipline for violating the Rules of Professional Conduct. *Id.* at 586–87, 889 *A.*2d 426 (citing *Hawkins, supra,* 141 *N.J.* at 215, 661 *A.*2d 284). Moreover, the Court has stated that it is "committed to assuring that attorneys comply with accepted professional standards." *Id.* at 587, 889 *A.*2d 426 (citing *In re Harris*, 182 *N.J.* 594, 609, 868 *A.*2d 1011 (2005)).

■ It therefore follows that the litigation privilege does not protect an attorney from a claim by his or her client based upon statements the attorney made in the course of a judicial proceeding where, as in this case, it is alleged that the attorney breached his duty to the client by failing to adhere to accepted standards of legal practice.

Our conclusion is supported by *Mattco Forge, Inc. v. Arthur Young & Co.*, 5 *Cal.App.*4th 392, 6 *Cal.Rptr.*2d 781, *review denied,* 1992 *Cal. LEXIS* 3521 (Cal.1992). In that case, the plaintiffs asserted a contract claim against General Electric and retained the defendants to provide expert testimony on the issue of lost profits. *Id.* at 399, 6 *Cal.Rptr.*2d 781. The plaintiffs could not locate all of the original contract estimate sheets, and recreated those estimates based on certain non-contemporaneous information. *Id.* at 397, 6 *Cal.Rptr.*2d 781.

The plaintiffs in *Mattco* claimed that they did not know or have reason to know that the estimates would be provided to General

Electric in discovery. *Id.* at 399, 6 *Cal.Rptr.*2d 781. The federal district court determined that the plaintiffs had created and provided fraudulent documents to General Electric to inflate the damage claim and imposed sanctions. *Id.* at 397, 6 *Cal.Rptr.*2d 781.

The plaintiffs then brought suit against their experts and asserted various claims, including a claim for professional malpractice. *Id.* at 396, 6 *Cal.Rptr.*2d 781. The trial court determined that the plaintiffs' claims were barred by the litigation privilege established under California law. *Id.* at 401, 6 *Cal.Rptr.*2d 781. The California Court of Appeals reversed, concluding that the litigation privilege did not bar a party from bringing a professional malpractice claim against his or her own expert witness. *Id.* at 406, 6 *Cal.Rptr.*2d 781.

The court stated that the policies underlying the privilege are to: afford litigants access to the courts without fear of harassment by later lawsuits, avoid the proliferation of lawsuits, and facilitate crucial functions of the trier of fact. *Id.* at 402, 6 *Cal.Rptr.*2d 781. The court stated that applying the privilege to claims by a party against its own expert would not further those policies. *Id.* at 406, 6 *Cal.Rptr.*2d 781.

Our conclusion that the litigation privilege does not apply to a client's malpractice claim against his or her attorney also is supported by *Kolar v. Donahue, McIntosh & Hammerton,* 145 *Cal.App.*4th 1532, 52 *Cal.Rptr.*3d 712 (2006), *review denied,* 2007 *Cal. LEXIS* 2820 (Cal.2007). There, the plaintiffs retained the defendant law firm to represent them in a lawsuit with their neighbors over certain property improvements. *Id.* at 1535, 52 *Cal.Rptr.*3d 712. The plaintiffs lost the suit, and a judgment was entered against them. *Ibid.* The plaintiffs then brought a legal malpractice action against their attorneys, alleging that the attorneys failed to exercise reasonable care and skill in representing them in the litigation. *Id.* at 1540, 52 *Cal.Rptr.*3d 712.

The defendants in *Kolar* argued that the plaintiffs' claims were barred by the litigation privilege. *Id.* at 1540, 52 *Cal.Rptr.*3d 712. The California Court of Appeals held that, while the scope of the litigation privilege was "extremely broad when applicable," it did

not "apply in all situations." *Id.* at 1541, 52 *Cal.Rptr.*3d 712. The court said that there was "no sound reason" why litigators should be immune from malpractice liability and declined to extend the litigation privilege to the plaintiffs' claims. *Ibid.*

In our view, the reasoning of the California courts in *Mattco* and *Kolar* is persuasive and in line with this State's commitment to ensure that attorneys adhere to accepted standards of practice. *Loigman, supra,* 185 *N.J.* at 587, 889 *A.*2d 426. We recognize that attorneys must be free to vigorously represent their clients without "fear of being ensnared in costly civil litigation." *Id.* at 589, 889 *A.*2d 426. However, the litigation privilege should not be extended to protect an attorney from civil liability where his or her client claims that the attorney's representation did not meet the applicable standards for legal practice.

■ We therefore conclude that the trial court erred by determining that the litigation privilege bars Buchanan's legal malpractice claim. We accordingly reverse the grant of summary judgment on that claim.

As did the motion judge, we construe Buchanan's remaining cause of action, other than defamation, as restatements of his malpractice claim. We decline to consider for the first time on appeal whether the litigation privilege bars causes of action other then malpractice filed by a client against his attorney. The trial court shall address that issue on remand, if plaintiff wishes to pursue those claims.

IV.

Buchanan also argues that the motion judge erred by concluding that expert testimony was required to support his legal malpractice claim. We do not agree.

■ "As 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." *Carbis Sales, Inc. v. Eisenberg,* 397 *N.J.Super.* 64, 78, 935 *A.*2d 1236 (App.Div.2007) (quoting *Stoeckel v. Twp. of Knowlton,* 387 *N.J.Super.* 1, 14, 902 *A.*2d 930

(App.Div.2006), *certif. denied,* 188 *N.J.* 489, 909 *A.*2d 724 (2006)). On the other hand, "when the attorney's 'duty is so basic that it may be determined by the court as a matter of law,' expert evidence is not required to establish the attorney's duty of care." *Kranz v. Tiger,* 390 *N.J.Super.* 135, 147, 914 *A.*2d 854 (App.Div.) (quoting *Brizak v. Needle,* 239 *N.J.Super.* 415, 429, 571 *A.*2d 975 (App.Div.), *certif. denied,* 122 *N.J.* 164, 584 *A.*2d 230 (1990)), certif. denied, 192 N.J. 294 (2007).

 Here, the motion judge correctly determined that Buchanan was required to present expert testimony in support of his malpractice claim. As we have explained, Buchanan's insurer retained Morgan Melhuish to represent him in the Kerrs' litigation and the firm assigned Leonard to handle the matter. Leonard sought settlement authority from NJPLIGA and, in doing so, asserted that Buchanan committed bankruptcy fraud and would have been subject to criminal prosecution had the statute of limitations on the offense not run.

Defendants maintain that Leonard was merely providing NJPLIGA with his candid assessment of Buchanan's potential liability in the lawsuit. Buchanan contends, however, that defendants had a duty to represent him with undivided loyalty. He asserts that defendants breached that duty by stating as a fact that he committed a criminal offense. Buchanan contends that Leonard's statements virtually assured that NJPLIGA would withdraw coverage and force him to pursue the declaratory judgment action.

The standard of care that should guide an attorney in the situation presented here would not be readily apparent to persons of "average intelligence and ordinary experience." *Rosenberg v. Cahill,* 99 *N.J.* 318, 325, 492 *A.*2d 371 (1985). Without the assistance of expert evidence, a trier of fact would not be able to determine the duty of care that applies under the circumstances of this case. Thus, the motion judge correctly determined that Buchanan must present expert testimony to support his claim.

Buchanan alternatively argues that, if the motion judge was correct in deciding that he required expert testimony, the judge should have afforded him time to produce his expert report. He notes that he had retained an expert to provide a report if one was required. Moreover, the time for discovery had not expired. As we stated previously, the motion judge reasoned that, while expert testimony was required to support Buchanan's legal malpractice claim, production of such a report would be futile because the claim was barred by the litigation privilege.

We have determined that the judge erred in determining that the litigation privilege applied to Buchanan's legal malpractice claim. Because he was prepared to present his expert report supporting that claim within the prescribed discovery period, on remand, Buchanan should be afforded the opportunity to produce an expert report.

Affirmed in part, reversed in part and remanded for further proceedings.