**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2711-19

R.D.,[1]

    Plaintiff-Appellant,

v.

L.S.B.,

    Defendant-Respondent.

_____

Submitted October 25, 2021 – Decided November 15, 2021

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1674-20.

R.D., appellant pro se.

Bell & Shivas, PC, attorneys for respondent (David T. Shivas, of counsel and on the brief).

PER CURIAM

_____

[1] We use initials to protect the identities of the parties pursuant to Rule 1:38-3(c)(12).

Plaintiff R.D., who is self-represented, appeals from a January 24, 2020 order dismissing his temporary restraining order (TRO) against defendant L.S.B., pursuant to the New Jersey Prevention of Domestic Violence Act (NJPDVA), N.J.S.A. 2C:25-17 to -35.  Plaintiff also appeals from a March 3, 2020 order denying a stay pending appeal.  We affirm both orders.

I.

We briefly summarize the pertinent facts from the record.[2]  Prior to May 1, 2017, the parties had a dating and professional relationship. On that day, defendant requested a complete termination of their relationship, "radio silence," which plaintiff respected.  Since May 2017, the parties' only communications have been "solely through the courts."

---

[2]  Plaintiff submitted an appendix that is "greatly expanded" compared to the record developed before the Family Part.  The record on appeal "is limited to the record developed before the [Family Part]," Davis v. Devereux Found., 209 N.J. 269, 296 n.8 (2012) (citations omitted); R. 2:5-4(a), unless a motion is granted to permit supplementation of the administrative record, R. 2:5-5(b).  On June 6, 2020, plaintiff filed a motion, which included a request to supplement the record.  On July 24, 2020, we denied plaintiff's motion.  On July 30, 2020, plaintiff filed a second motion, which again included a request to supplement the record.  On August 14, 2020, plaintiff's motion was again denied.  As such, review is limited only to the facts relied upon by the Family Part, which include plaintiff's TRO complaint, defendant's motion to vacate and dismiss the complaint, with attached exhibits, the transcript of the TRO hearing dated November 21, 2020, and the transcript of the hearing regarding defendant's motion, dated January 24, 2020.

On August 9, 2017, defendant filed a police report and applied for a TRO against plaintiff alleging he had sexually assaulted her on February 7, 2017, and repeatedly threatened her and her family thereafter until May 1, 2017. In 2017, a Family Part judge denied defendant's request for a final restraining order (FRO).

Two years later on February 5, 2019, defendant filed a complaint in the Law Division asserting claims against plaintiff, his partner, and business alleging intentional torts and violations of State and federal employment discrimination statutes.[3] Plaintiff's motion for summary judgment on the theory of issue preclusion was denied. Plaintiff's counterclaim included counts pleading defamation. Following denial of the motion, plaintiff's counsel withdrew from the Law Division matter. On November 22, 2019, an order was entered affording plaintiff ninety days to retain new counsel.

One day prior to the Law Division order being entered, plaintiff sought a TRO against defendant. In his complaint, he alleged that on February 5, 2019, defendant "filed a false civil lawsuit[,] [two] days before the statute of limitations ran out, and through numerous court documents has radically and materially changed her original . . . story and testimony [since] 2017." Plaintiff

---

[3] L.B. v. Saga Glob. Cap. Mgmt., LLC, No. L-0984-19.

further averred "[b]oth filings by defendant . . . are intended to inflict aggravated criminal coercion on . . . [me] under N.J.S.A. 2C[:]13-5."  Ostensibly, plaintiff filed the TRO complaint under the belief "if [defendant] can file a TRO against me in [the] [F]amily [Part] in 2017 and lose, and then go to the Law Division and get that . . . heard, then clearly I can countersue and come back to th[e] [Family Part] when I figured out . . . the criminal coercion, which I only figured out . . . after we . . . [got] rid of our attorney."

On November 21, 2019, the prior Family Part judge conducted a hearing on plaintiff's TRO complaint.  During the hearing, plaintiff admitted defendant's contact had been "solely through the courts," but explained he wanted to "pursue this [claim] under criminal coercion and then also . . . with the Essex County Sheriff's Department" because he "can't raise any money [as a hedge fund manager] because . . . everyone . . . see[s] all these things that [he's] . . . being accused of."  Plaintiff testified that he "need[ed] to be protected" because defendant had "committed criminal coercion[,] . . . . [which] [was] escalating."

During the TRO hearing, plaintiff attempted to reference issues and facts raised during defendant's 2017 domestic violence hearing.  However, the judge informed plaintiff that the issues and facts previously raised during defendant's domestic violence hearing were not relevant to his application for a TRO based

4

on defendant's conduct on February 5, 2019. After hearing plaintiff's argument, the judge attempted to clarify defendant's right to sue civilly and the limitations of a TRO to limit such rights. "[I]n [20]17 [defendant] filed . . . a civil complaint. . . . She has the right to do that. That court will adjudicate that matter. . . . That's not a basis for this case." The judge noted:

> [T]he intention of the [NJPDVA] was to protect people from danger or harm that comes from domestic abuse. And, certainly, the . . . statute outlines criminal coercion as one, but criminal coercion under the domestic violence statute, the (indiscernible) behavior must demonstrate a pattern of behavior where the person has asserted power and control over the other person.
>
> In this matter, she's exercising her right to bring about civil litigation against you and whoever the judge is, is handling the civil aspect of it, can enter . . . certain orders to . . . preclude her from taking or filing certain papers if it determines that . . . these papers . . . [are] merely . . . false in nature . . . .
>
> . . . .
>
> Having a restraining order doesn't preclude her from filing whatever papers she wants to . . . . The court allows her to file[,] . . . [allows] everyone [to] file[,] whatever they want to file. . . .
>
> . . . .
>
> It's going to prevent her from having . . . any communications with you. . . .

. . . .

> If you believe that [defendant] has abused the system and has wreaked havoc on your life, . . . move[] before the [c]ivil [c]ourt and ask[] that judge to enter an order that precludes her from filing any more documents or publishing anything with regards to you in connection with the litigation unless she seeks permission from the court [first.]

Despite the judge's assurances that plaintiff's sought after relief could not be granted through the issuance of a TRO, plaintiff continued to insist on his need for one. The judge ultimately granted plaintiff a TRO after he established a prima facie evidence of domestic violence in response to his argument that defendant had exposed their affair. "[S]he's exposed a secret. That's also criminal coercion. She exposed our affair." In granting the TRO, the judge stated:

> [W]hether or not you can establish by a preponderance of the evidence that a domestic violence offense has occurred is for another judge to determine, but for the purposes of today, there's a prima facie level at best of domestic violence. The [c]ourt will enter a [TRO].
>
> . . . .
>
> Defendant is barred from your place of residence, your place of employment, having any communications, electronic or other form of contact or communication.

And prior to concluding the hearing, the judge reiterated to plaintiff:

6

> This order does not restrict . . . [or] cannot be used to restrict the defendant's right to file matters with the court it relates to civil litigation.

The judge granted an "indefinite" TRO because defendant lived out-of-state and was unable to be served. However, defendant was eventually served with the domestic violence complaint and TRO. On January 9, 2020, defendant, represented by counsel, filed a motion to dismiss the TRO for failure to state a proper basis for the restraints sought, pursuant to N.J.S.A. 2C:25-28(i). Defendant noted she had not been in contact with plaintiff for more than two years prior to the filing of the TRO and lives in a different state. Additionally, defendant alleged the domestic violence complaint largely repeated the substance of plaintiff's motion for summary judgment in the Law Division action.

On January 24, 2020, another Family Part judge heard oral argument on defendant's motion to dismiss the TRO. During oral argument, plaintiff again testified that "[he] filed the TRO because [he] [is] in legitimate need . . . of protection and need[s] a shield" to protect him from defendant's civil complaint. "I'm filing this TRO because I . . . am being criminally coerced, extorted and it is escalating. [Defendant] went to the Cedar Grove [P]olice and filed a false police report on August 9, 2017. And that is central to the issue and is the basis

for this TRO." "The 2019 Law Division case is built upon the [2017] case that she lost. . . . Now things have changed dramatically in my favor in 2019 where I can legitimately claim the protection afforded me under the Family [Part]." "[Defendant], in essence, has stolen my life. I want it back and I have the evidence to get it back. To get it back, I need protection so I can start going down that road."

Regarding plaintiff's danger in response to defendant's exposure of the parties' presumed affair, plaintiff testified:

> [Defendant] is guilty . . . she has . . . expos[ed] an affair with me as well as telling the police six months after the non-fact about a secret [rape] and the ongoing threats of mass murder to [defendant] and her family and kids . . . .
>
> Raping someone is an absolute instant show stopper for a[n] . . . emerging hedge fund manager in every aspect of his business. An emerging hedge fund manager is trying to gain investors' trust. Investors and people in general, many hear the word rape and they automatically filter out everything else . . . and the result is, they have nothing to do with that person accused of rape and they end up hating or having contempt for them instantly. [Defendant] exposed a secretive affair as well as a secret rape.

The same day, after hearing arguments from plaintiff, who was self-represented, and defendant's counsel, the judge granted defendant's motion and dismissed the TRO. The judge found:

8

The complaint in the [TRO], the offense date is listed as February 5, 2019. And apparently, that's the date that the defendant . . . filed a civil lawsuit . . . . It's eleven counts, law against discrimination, retaliation, hostile work environment, etcetera. And that is a civil matter that is, as the parties said, currently pending. . . .

And the basis of th[is] [TRO] complaint is that . . . [defendant] has made these false defamatory-type of accusations in that lawsuit, all with the intent to damage the business repute of the plaintiff here. . . .

[T]he alleged predicate offenses are harassment and criminal coercion. But it appears that . . . all the alleged statements that [defendant has] made of this . . . nature are contained in these legal pleadings and legal proceedings . . . or as to testimony she gave under oath . . . in the prior domestic violence hearing.

. . . .

[I]t appears that all the statements she made were in the context of the litigation . . . . And there . . . is a litigation immunity . . . [and] it's afforded in judicial proceedings where [j]udges, attorneys, witnesses, parties and the jurors may be protected against defamation actions based on utterances made in the course of judicial proceedings. Even those statements that are defamatory or malicious, . . . there is absolute immunity if it's made in the course of proceedings before a court, before a judge. . . .

And right now, that litigation is pending. She's filed a lawsuit. She's made certain allegations. And I . . . think the potential slippery slope here is that every plaintiff that files a civil lawsuit against a former employer . . . runs the risk of the employer coming in

9

and seeking a restraining order to essentially try and stifle what the plaintiff is doing in the civil case. . . . [T]hat's not what the [NJPDVA] was intended for . . . .

. . . .

[A] plaintiff who has abused the system in order to try and damage [a defendant] . . . has civil remedies, abuse of process, frivolous lawsuit, things of that nature.

Additionally, the judge noted criminal coercion requires both a threat and a restriction of another's freedom of action, neither of which he found in the matter under review. "There's . . . not even a scintilla of evidence that on February 5[,] or since then, this . . . defendant has contacted this plaintiff and made any harassing statements or criminally coerced him." A memorializing order was entered. This appeal followed.

## II.

On appeal, plaintiff argues the Family Part judge erred in dismissing his domestic violence complaint and TRO. The trial court's findings of fact "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). An appellate court may not set aside a trial court's factual findings unless convinced the findings "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

Moreover, "[b]ecause of the [F]amily [Part's] special jurisdiction and expertise in family matters, appellate courts should accord deference to [F]amily [Part] factfinding." Id. at 413. We will not defer, however, to the Family Part's legal conclusions if "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Questions of law are reviewed de novo and are not entitled to any special deference. See Gere v. Louis, 209 N.J. 486, 499 (2012).

Under the NJPDVA, the Family Part has subject matter jurisdiction to adjudicate complaints seeking relief so long as: (1) one of the "domestic violence" acts enumerated under N.J.S.A. 2C:25-19(a) is present; (2) such act was inflicted upon a person protected under N.J.S.A. 2C:25-19(d); and (3) such action is venued pursuant under N.J.S.A. 2C:25-28(a), either: (a) where alleged act of domestic violence occurred; (b) where defendant resides; or (c) where plaintiff resides or is sheltered. Shah v. Shah, 184 N.J. 125, 137 (2005). Here, plaintiff alleged the predicate acts of harassment, N.J.S.A. 2C:25-19(a)(13), and criminal coercion, N.J.S.A. 2C:25-19(a)(15).

11

A person is guilty of harassment where, "with purpose to harass another," he or she: (a) communicates in any "manner likely to cause annoyance or alarm"; (b) strikes, kicks, shoves, or subjects another to any other offensive touching or threats of; or (c) "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(a)-(c). Plaintiff admitted on the record that defendant has not communicated with him. And, plaintiff never testified that defendant struck, kicked, shoved, or offensively touched him as defined in N.J.S.A. 2C:33-4(b).

We see no merit in plaintiff's argument that defendant's conduct was alarming or repeated with purpose to alarm or seriously annoy him as defined by N.J.S.A. 2C:33-4(c) because the record does not support the notion any such conduct occurred. The domestic violence complaint filed in 2017 by defendant pled entirely different statutory elements than her Law Division complaint filed almost three years later. After considering plaintiff's testimony, the judge emphasized, "I [don't] think it's . . . what the [NJPDVA] was designed for." "[T]here . . . must be an immediate danger present. I just don't see it . . . . [T]here are many civil litigations that are filed that allege perhaps malicious allegations . . . [b]ut this is really not the type of case that is a domestic violence

proceeding." For these reasons, we reject plaintiff's argument that the Family Part judge was required to find defendant's 2019 Law Division complaint contained threats or was harassing under the NJPDVA.

Moreover, the Family Part judge found the litigation privilege applies to the matter under review, which protects attorneys and litigants "from civil liability arising from words . . . uttered in the course of judicial proceedings." Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566, 579 (2006); Dello Russo v, Nagel, 358 N.J. Super. 254, 265 (App. Div. 2003). The privilege shields "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Buchanan v. Leonard, 428 N.J. Super. 277, 286 (App. Div. 2012) (quoting Loigman, 185 N.J. at 585). The privilege is not confined to the courtroom and "extends to all statements or communications in connection with the judicial proceeding." Ruberton v. Gabage, 280 N.J. Super. 125, 133 (App. Div. 1995) (citations omitted).

When "determining whether the [litigation] privilege is a defense, it is irrelevant whether the statement at issue was defamatory." Feggans v. Billington, 291 N.J. Super. 382, 393 (App. Div. 1996) (citing Lutz v. Royal Ins.

Co. of Am., 245 N.J. Super. 480, 496 (App. Div. 1991)).  The litigation privilege "may be extended to statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed."  DeVivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988) (citation omitted).  "The only limitation which New Jersey places upon the privilege is that the statements at issue 'have some relation to the nature of the proceedings.'"  Rabinowitz v. Wahrenberger, 406 N.J. Super. 126, 134 (App. Div. 2009) (quoting Hawkins v. Harris, 141 N.J. 207, 215 (1995)).

We agree with the judge that defendant's allegations are protected under the litigation privilege.  The allegations were made in judicial proceedings, by a litigant, to achieve the objects of the litigation, and have a logical relation to the action, as required.  Buchanan, 428 N.J. Super. at 286 (quoting Loigman, 185 N.J. at 585).  Therefore, defendant's allegations are protected, and plaintiff may not bar her from pursuing her civil claims on the basis of a potential detrimental effect on his reputation.  A civil allegation, unless found to be an abuse of process or a frivolous lawsuit, does not qualify as "harassment" or "domestic violence," as required under the NJPDVA.  See Shah, 184 N.J. at 143

14

(citing N.J.S.A. 2C:25–28(g)). Plaintiff's argument to the contrary is devoid of merit.

Plaintiff also argues he is in danger of criminal coercion under the NJPDVA. N.J.S.A. 2C:25-19(a)(15). A person is guilty of criminal coercion where, "with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct," he or she threatens to: "(2) [a]ccuse anyone of an offense; (3) expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;" or "(7) any other act . . . calculated to substantially harm another person with respect to his . . . business, . . . career, . . . financial condition, [or] reputation." N.J.S.A. 2C:13-5(a). Again, we disagree.

Based on the record before us, we are convinced defendant did not threaten plaintiff. As the judge aptly pointed out, "[defendant] has to threaten to do [something]. I don't see the threat. She filed a lawsuit and . . . that's essentially it." Therefore, the judge properly granted defendant's motion and dismissed plaintiff's TRO. We see no need to address the remaining issues raised by plaintiff, as we find plaintiff failed to prove a predicate act on this record.

A-2711-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-2711-19