**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0547-24

MICHAEL PAVLOV,

      Plaintiff-Appellant,

v.

JOHN E. HERMANN FUNERAL
SERVICE, JOHN E. HERMANN,
and SILVANA DIMITROVA,

      Defendants,

and

GERARD HANLON, ESQ. and
HANLON, DUNN, ROBERTSON
& SCHWARTZ, LLC,

      Defendants-Respondents.

_____

Submitted October 2, 2025 – Decided December 10, 2025

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1859-21.

Lanza Law Firm, LLP, attorneys for appellant (Kenneth W. Thomas, of counsel and on the brief).

McElroy, Deutsch, Mulvaney & Carpenter, attorneys for respondents (Daniel A. Malet, of counsel and on the brief).

PER CURIAM

Plaintiff Michael Pavlov appeals from the July 12, 2024 order granting summary judgment in favor of defendants Gerard Hanlon and Hanlon, Dunn, Robertson & Schwartz, LLC (collectively, the Hanlon defendants), and dismissing his second amended complaint. He also appeals from the October 16, 2024 order entering final judgment of $35,000 against defendant Silvana Dimitrova. Having considered the parties' arguments pursuant to the record and applicable legal principles, we affirm.

I.

Viewed in the light most favorable to plaintiff as the non-moving party, we recite the underlying facts and procedural history relevant to this appeal. Cristello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). The record reveals the Pavlov family members were estranged. In June 2019, Michael's father, Boris Pavlov,[1] died intestate in his apartment in Springfield. According to the police

---

[1] We refer to plaintiff and his family members by their first names because of the shared surname. No disrespect is intended.

report, Boris died in the presence of a registered nurse and his long-term girlfriend, Dimitrova, with whom he had resided for twenty years. In the five months preceding his death, Boris received hospice care. He is survived by his sons, Michael and Alex, and a grandson.

During Michael's deposition, he testified he did not speak with Boris about his health. Michael acknowledged he was unaware of Boris's wishes, stating they "didn't really talk about the whole death thing." He was also unaware that Boris had been in hospice care, as no one had informed him. Michael last visited Boris, along with his son, in August 2018. He continued to speak with Boris a couple of times a week until either Thanksgiving or Christmas 2018. After that, he called Boris, but his call was not answered.

Michael acknowledged a relationship existed between Boris and Dimitrova since at least 2010 or 2012. He disputed they were in a relationship for twenty years and asserted Hanlon, as his father's friend for thirty years and former attorney, would have been aware of this.

After Boris passed away, Dimitrova contacted Hanlon. At Dimitrova's request, the Hanlon defendants prepared an affidavit on firm letterhead, referencing "In the Matter of Boris Pavlov," despite the fact no probate matter

3

had been initiated.[2]  In the affidavit, Dimitrova declared Boris was her partner for twenty years, and they resided together in the Springfield apartment.  She also stated Boris had two adult children, who could not be located; he had not seen or heard from them for two years; he had no brothers and sisters, and both parents were deceased; and he expressed to Dimitrova he wished to be cremated.  The affidavit was signed by Dimitrova and notarized by Hanlon.

According to John Hermann, director of Hermann Funeral Service (collectively, Hermann defendants), Dimitrova contacted Legacy Funeral Service, an online funeral service in Colorado.  Legacy contacted the Hermann defendants to transport Boris from the apartment to Hermann Funeral home.  During his deposition, Hermann testified his funeral service prepared the death certificate and cremation authorization for Boris.  The authorization provided in relevant part:

> I (We), the undersigned, hereby certify that I am the closest living next of kin of the decedent and that . . . I otherwise serve (served) in the capacity of <u>DOMESTIC PARTNER</u> of the decedent, that I have charge of the remains of the decedent, and as such possess full legal authority and power, according to the laws of the [S]tate of <u>NJ</u> to execute the authorization form and to arrange for the cremation and disposition of the cremated remains of the decedent.  In addition, I am

---

[2]  In his merits brief, Michael refers to Dimitrova's affidavit as a letter due to its presentation on firm letterhead.

A-0547-24

> aware of no objection to the cremation by any spouse, child, parent or sibling. Initials: <u>SD</u>
>
> * * * * *
>
> By executing this Cremation Authorization Form the undersigned warrants that all statements and representations are true and correct.

The authorization was signed by Dimitrova as Boris's "domestic partner" in the presence of the employees of the Hermann defendants. Hermann testified he received the notarized letter on Hanlon letterhead stating Dimitrova was Boris's domestic partner. He also testified he does not request verification of the relationship between the deceased and the person representing they have the authority to authorize cremation. Therefore, he accepted Dimitrova's representations as true without further inquiry. Boris was subsequently cremated.

According to Michael, he learned of Boris's death from a co-worker sometime in August or September 2019. Also, he did not receive Boris's ashes. Michael was unable to locate Boris's remains or his possessions, as the apartment had already been cleared out by Dimitrova, whose whereabouts were unknown.

Upon learning of his father's death, Michael contacted the Hanlon defendants, claiming Hanlon knew where he lived. Hanlon told Michael the firm attempted to find him for months, but he could not be located.

A-0547-24

Michael filed both a complaint and an amended complaint against the Hermann defendants and Dimitrova, asserting claims of intentional infliction of emotional distress, negligent infliction of emotional distress, violation of rights under the New Jersey Constitution, replevin, conversion, unjust enrichment, and negligence.[3] He filed a second amended complaint, adding the Hanlon defendants as parties and asserting claims of negligence, professional negligence, and deprivation of constitutional rights against them.

Following the close of discovery, the Hanlon defendants moved for summary judgment. In opposing the motion, Michael relied on the affidavit of merit prepared by his expert, Franklin Whittlesey, Esq. in connection with his legal malpractice claim. Whittlesey acknowledged the Hanlon defendants did not represent Michael; however, he opined Michael was owed a limited duty as a specific non-client. Also, Whittlesey reviewed Michael's second amended complaint, Boris's death certificate, Dimitrova's affidavit, Michael's responses to discovery, and the deposition testimony of Michael and Hermann and the applicable law. He concluded Michael's second amended complaint was based upon a "legitimate legal argument" and facts, which would support his claim.

---

[3] Default judgment as to liability was entered against Dimitrova on August 9, 2021. A stipulation of dismissal with prejudice was entered on July 13, 2021, reflecting the settlement of Michael's claims against the Hermann defendants.

Michael also relied on a May 5, 2022 certification from the New Jersey Department of Health, Office of Vital Statistics and Registry. The certification stated "no records were found pertaining to a domestic partnership between . . . Boris Pavlov[] and Silvann[4] Dimitrova" from January 1, 2010, through April 30, 2022.

In the July 12, 2024 order, accompanied by a statement of reasons, the trial court granted the Hanlon defendants' motion for summary judgment, finding no genuine issue of material fact. The court concluded Michael failed to establish claims of negligence and professional negligence, stating the Hanlon defendants did not owe a duty of care to Michael. Citing Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 213 (App. Div. 2014), the court explained Michael's claim was based solely on the allegation that Hanlon issued a letter containing knowingly false information, for which there was no evidence. Finally, the court rejected Michael's contention the affidavit was the proximate cause of Boris's cremation, as there was no evidence in the record the Hanlon defendants knew the Dimitrova certification contained false information, and the Hermann defendants did not rely on the certification.

---

[4] We note the certification improperly spells Dimitrova's first name, which will be addressed later.

A proof hearing was held. Following Michael's testimony, the court entered an order on October 16, 2024, against Dimitrova for $35,000.

On appeal, Michael contends the court erred in granting summary judgment because there was sufficient evidence in the record for the matter to proceed to a jury. He argues he established the elements of ordinary negligence and professional negligence by the Hanlon defendants. We are not persuaded by these arguments.

II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . [']against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal

analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Michael initially contends the trial court erred because he established ordinary negligence. It is well-settled, to establish a claim for negligence, a plaintiff bears the burden of establishing four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)). "A 'plaintiff bears the burden of establishing those elements "by some competent proof."'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Davis, 219 N.J. at 406).

Michael likewise contends the court erred in determining he had not established a professional negligence claim. Legal malpractice claims are "grounded in the tort of negligence." Gilbert v. Stewart, 247 N.J. 421, 442 (2021) (quoting Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020)). Accordingly, a plaintiff is likewise required to establish the four elements of a legal malpractice claim: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the [(4)] damages claimed." Id. at 442-43 (quoting Nieves, 241 N.J. at 582). A plaintiff has the burden to

establish these elements "by some competent proof." Id. at 443 (quoting Townsend, 221 N.J. at 51 (quoting Davis, 219 N.J. at 406)).

Michael has not presented competent evidence to support his claim the Hanlon defendants were liable for breaching a duty owed to a non-client, whether under a theory of ordinary negligence or professional negligence. Generally, our Supreme Court has expressed "reluctance to permit non-clients to sue attorneys." Green v. Morgan Props., 215 N.J. 431, 460 (2013). "[I]n limited circumstances, 'attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys' representations and the non-clients are not too remote from the attorneys to be entitled to protection.'" Innes, 435 N.J. Super. at 213 (quoting Petrillo v. Bachenberg, 139 N.J. 472, 483-84 (1995)). Nevertheless, the Court has held "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship [remain] exceedingly narrow." Green, 215 N.J. at 458.

Our courts have also recognized that "[p]rivity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm which occurred.'" Innes, 435 N.J. Super at 213 (alteration in original) (quoting Est. of Albanese v. Lolio, 393 N.J. Super. 355, 368-69 (App. Div. 2007)). While "[t]he determination of the existence of a duty

10

is a question of law for the court," Petrillo, 139 N.J. at 479, "[t]he primary question . . . is one of fairness." Est. of Albanese, 393 N.J. Super. at 369.

Michael acknowledges he was not an active client of the Hanlon defendants. Instead, he contends the Hanlon defendants owed him a duty based on their prior attorney-client relationship when he was a minor and in a 2018 family matter. Michael further argues the Hanlon defendants breached this duty by failing to contact him upon his father's death, which affected his ability to intervene in the cremation arrangements and ultimately prevented him from obtaining some or all his father's property. He contends the false and misleading information contained within Dimitrova's affidavit was relied upon by third parties to his detriment.

The record fails to support Michael's arguments. Hanlon told Michael that repeated attempts to locate him over months were unsuccessful. Additionally, the record shows Michael had minimal contact with Boris and no contact with Dimitrova. Michael did not discuss Boris's wishes with him and was therefore unaware of Boris's preferences regarding cremation arrangements or the distribution of his property. The Hanlon defendants could not reasonably have foreseen harm to Michael, as Hanlon simply notarized the affidavit. Thus, it would be unfair to extend a duty to the Hanlon defendants when neither Michael nor Dimitrova were clients of the firm.

A-0547-24

We acknowledge the Vital Statistics and Registry certification states no domestic partnership was registered; however, we note Dimitrova's first name was misspelled on the certification. Additionally, Michael's deposition testimony, primarily based on "unsubstantiated inferences and feelings," is insufficient to defeat a motion for summary judgment. Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001). "Bald assertions [by the non-moving party] are not capable of either supporting or defeating summary judgment." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 97-98 (App. Div. 2014).

We also add, to prove professional negligence, a plaintiff must present expert testimony regarding the standard of care and any deviation from it by the Hanlon defendants. See Buchanan v. Leonard, 428 N.J. Super. 277, 288-89 (App. Div. 2012) ("As 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." (quoting Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 78 (App. Div. 2007))). Michael had no expert report or expert deposition establishing an accepted standard of care.

Simply put, there is no objective, competent evidence in the record to support Michael's arguments that he established ordinary or professional negligence. Based on our review of the motion record, we conclude summary

judgment was properly granted dismissing Michael's second amended complaint.

Finally, Michael did not brief an argument concerning the October 16, 2024 final judgment of $35,000 entered against Dimitrova. "An issue not briefed on appeal is deemed waived." Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017) (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)).

To the extent we have not addressed Michael's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division