**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0822-24

SHAPIRO, CROLAND, REISER,
APFEL & DI IORIO, LLP,

    Plaintiff-Respondent,

v.

JEFFREY ROSS,

    Defendant-Appellant.

_____

Submitted May 12, 2026 – Decided May 29, 2026

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2581-21.

Jeffrey Ross, self-represented appellant.

Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, self-represented respondent (Alexander G. Benisatto, on the brief).

PER CURIAM

Defendant Jeffrey Ross, self-represented, appeals from the August 20, 2024 trial court order entering judgment after a bench trial in favor of plaintiff Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP for attorneys' fees and costs. Defendant also appeals from the court's October 25, 2024 order denying his motion for reconsideration. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the facts relevant to the issues raised in this appeal from the record. On February 6, 2019, defendant entered two retainer agreements with plaintiff for legal representation. The separate retainer agreements memorialized plaintiff's representation of defendant in a pending appeal and an estate litigation. Plaintiff provided defendant legal services from February 2019 through April 2020.

After defendant failed to pay plaintiff for legal services rendered in both actions, in October 2020, plaintiff demanded payment and notified defendant of his right to seek fee arbitration pursuant to Rule 1:20A-6. Plaintiff granted defendant extensions of time to participate in fee arbitration, but defendant did not file a timely application for fee arbitration. In April 2021, plaintiff filed a

complaint against defendant for payment of $36,845.29 for legal services rendered.

In November 2022, defendant requested fee arbitration, which was declined based on the issues presented. On July 14, 2023, defendant filed an answer, which was titled "Certification of Jeffrey Ross in Opposition to . . . [the] Complaint[ and] dated April 19, 2021." Defendant's answer denied he had "promised and agreed" to pay for plaintiff's legal services rendered and he asserted a counterclaim against plaintiff for monies owed based on the failure to perform legal services according to his "legitimate requests and instructions." He alleged that attorneys working for plaintiff—Victoria Pekerman, Esq., and David Marcus, Esq.—were derelict in representing him "in contradiction[] to their professional responsibilities." Defendant claimed damages of "$68,237.71 and $2,811." On August 11, 2023, plaintiff filed an answer to the counterclaim. Defendant did not file an affidavit of merit (AOM) pursuant to N.J.S.A. 2A:53A-27.

On April 5, 2024, defendant served plaintiff with an offer of judgment pursuant to Rule 4:58-1. Plaintiff's offer of judgment was $22,500, which defendant did not accept.

A-0822-24

In July 2024, the court presided over a two-day bench trial. Plaintiff presented the testimony of Marcus and defendant testified. Marcus explained that the retainer agreements provided for an hourly attorney billable rate of $350, an hourly paralegal billable rate of $125, and had separate initial retainer fee amounts. Marcus stated defendant had multiple prior attorneys and the estate litigation matter had been pending since 2016. Regarding interactions with defendant, Marcus testified that he "was probably one of the most difficult clients [he] ever had to deal with." While recognizing it was costly to defendant, Marcus maintained they tried to "satisfy" defendant's demands by ensuring he was "advised of everything that was going on in the case." Marcus explained defendant did not trust the opposing attorney or the probate judge.

Regarding the litigation, Marcus detailed defendant wanted copies of everything drafted, which was not unusual. However, Marcus stated defendant wanted "a long lead time" to review drafts and would make "change[s]" that Marcus did not believe "were acceptable . . . in a document . . . fil[ed] with the [c]ourt." Marcus recalled "there were multiple rounds of revisions" for each filing. He explained that ultimately the estate litigation resulted in a settlement reached with defendant's consent, which was placed on the record.

4

Marcus attested that the invoices from February 2019 to May 2020 for the estate litigation accurately represented the time spent and that the work performed was reasonable and necessary. Further, Marcus maintained defendant never contested the services rendered or the amount of the invoices. He represented defendant owed plaintiff $34,931.29 for the estate litigation.

Regarding plaintiff's representation in the appeal, Marcus testified to the invoices and the appellate work performed. Marcus stated the invoices itemized accurate time entries and reflected the necessary work performed. He again relayed defendant never contested the work or amount billed. Marcus stated that defendant owed $1,914 for the legal services rendered in the appeal. Regarding the offer of judgment filed, Marcus explained defendant never paid the demanded amount.

On cross-examination, Marcus explained that the approximate total amount of $11,000 billed for the appeal was based on reviewing the estate record, drafting a reply, and preparing for argument. Additionally, Marcus discussed the complexity of the issues surrounding the estate litigation. Concerning settlement of the estate litigation, Marcus testified in detail as to the considerations and advice given to defendant based on an assessment of the matter. Defendant asked Marcus about the sufficiency of his representation

5

surrounding the appeal, and Marcus explained plaintiff did not file the initial brief but substituted in the appellate attorney. Marcus recalled reviewing the full appellate record, meeting with defendant, and arguing the matter.

During his testimony, defendant claimed the retainer agreements do not require him to "pay for services that are contrary to what [he] request[ed]." He conceded that he agreed to the hourly billable rates but contended that he did not owe plaintiff's amount claimed because the "services . . . were contrary to [his] expectations." He acknowledged not having an expert to support his counterclaims. Defendant stated he was "repeatedly dissatisfied with . . . Marcus' work," maintained he was not claiming negligence, and explained he was alleging a "breach [of] . . . fiduciary duty to work in [his] best interest." Because he was dissatisfied with plaintiff's work, defendant claimed he was owed $103,169, encompassing the amount plaintiff had billed "in violation of [its] fiduciary duties."

Defendant maintained that in 2019, Pekerman failed to follow his direction to seek attorney's fees from his sister when a motion to quash subpoenas in the estate litigation was filed. He asserted that Marcus and Pekerman breached their professional duties by: failing to be fully informed about his liability for estate taxes prior to the estate settlement in February 2020,

6

committing errors surrounding a "refunding bond," not presenting his requested arguments, and failing to schedule a meeting with opposing counsel in the estate matter. Defendant also represented that Marcus and Pekerman did not comply with "[]ethical standards" because their "presentations at court hearings that had nothing to do with the request[s] that [he] made for them to do."

On August 2, 2024, the court issued a nineteen-page oral decision finding that defendant signed the two retainer agreements with plaintiff and found that Marcus' and Pekerman's billing rate of $350 per hour was reasonable. The court found Marcus was credible because his "demeanor was calm, especially in light of questions which were posed to him by . . . [defendant,] which were often . . . duplicative, difficult to understand[,] and argumentative." Also Marcus' "recollection of the facts" demonstrated he was "inherently believable." The court determined defendant lacked credibility because he "lacked cogency" in addressing "the procedural history and legal intricacies" at issue. Further, the court noted defendant's credibility was undermined by his prior sworn testimony in the estate litigation settlement during which he testified he was satisfied with plaintiff's services. It found defendant's "dissatisfaction" with plaintiff's legal representation only "came to light" after plaintiff filed a claim "for the balance of attorney[s'] fees owed."

A-0822-24

Based on Marcus' credible testimony and the exhibits moved into evidence, the court determined defendant breached the retainer agreements. Specifically, the court reasoned plaintiff "performed under the contracts as was required, . . . [d]efendant breached the contracts by failing to pay[,] and . . . [p]laintiff ha[d] suffered damages as a result." The court found defendant owed a remaining "balance of $36,845.29," including "$34,931.29 in attorney[s'] fees" and "costs relat[ed] to the estate litigation[,] and $1,914 in attorney[s'] fees and costs related to the appeal."

Regarding the offer of judgment, the court found plaintiff was entitled to attorneys' fees and costs because the judgment entered was more than "120 percent of" plaintiff's demand that defendant did not accept. The court awarded the permitted eight percent prejudgment interest under Rule 4:58-2(a), totaling $1,042.44, and awarded $13,140 in attorneys' fees after reviewing the submitted certification, decreasing the hourly billable rate from $400 to $350, and finding 37.5 hours was fair and reasonable. The court's total award of $51,027.73 consisted of: "$36,845.29 . . . for unpaid legal fees," "$1,042.44 in prejudgment interest[,]" and "$13,140 in legal fees and expenses" under the offer of judgment.

Regarding defendant's counterclaim, the court determined defendant failed to file an "[AOM] in accordance with N.J.S.A. 2A:53A-27." The court

noted defendant's alleged "failures" by Marcus and Pekerman and their "dereliction of their professional responsibilities" concerned complex legal issues. It explained the claims were not within common knowledge and "[d]efendant ha[d] . . . failed to offer a legally sufficient expert opinion," which was fatal to his counterclaim.

On September 10, 2024, defendant moved for reconsideration. On October 25, 2024, the court issued an order accompanied by a written decision denying reconsideration. The court found "[n]one of [defendant's reconsideration] arguments . . . support[ed] the fact that the court . . . based its decision upon a palpably incorrect basis or did not consider or failed to appreciate the significance of probative, competent evidence."

On appeal, defendant contends reversal is warranted because: the court's judgment in favor of plaintiff is unsupported; the court ignored his trial testimony; Marcus' testimony lacked credibility; and the court erred in not granting reconsideration.

II.

We begin by recognizing the well-established standard of review of an appeal from a bench trial. We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in

9

accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). Ordinarily, "[t]he scope of [our] review of a trial court's fact-finding function is limited." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). "[W]e defer to the trial court's credibility determinations, because it '"hears the case, sees and observes the witnesses, and hears them testify," affording it "a better perspective than a reviewing court in evaluating the veracity of a witness."'" City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015)).

"Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional

10

ethics." Kopec v. Moers, 470 N.J. Super. 133, 157 (App. Div. 2022) (quoting Cohen v. Radio-Elecs. Officers Union, 146 N.J. 140, 155 (1996)). "A retainer agreement between an attorney and client is a contract, but not an ordinary contract. '[T]he unique and special relationship between an attorney and a client' requires that a retainer agreement satisfy not only ordinary principles governing contracts, but also the professional ethical standards governing the attorney-client relationship." Balducci v. Cige, 240 N.J. 574, 592 (2020) (alteration in original) (quoting Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009)). "When contracting for a fee . . . lawyers must satisfy their fiduciary obligations to the client[,]" which include explaining "at the outset the basis and rate of the fee" as well as "advis[ing] the client of potential conflicts, the scope of representation, and the implications of the agreement." Cohen, 146 N.J. at 156.

To prevail on a breach of contract claim, a plaintiff must prove: (1) "the parties entered into a contract containing certain terms"; (2) "plaintiff did what the contract required [plaintiff] to do"; (3) "defendant did not do what the contract required [defendant] to do"; and (4) "defendant's breach . . . caused a loss to the plaintiff." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225

11

N.J. 469, 482 (2016)). "Attorneys and clients can agree to fee arrangements of their choice, provided they do not violate the Rules of Professional Conduct [(RPC)]. The most conventional fee arrangement is for a client to pay an attorney on an hourly basis." Balducci, 240 N.J. at 597.

RPC 1.5(a) mandates, "A lawyer's fee shall be reasonable" and provides, "The factors to be considered in determining the reasonableness of a fee include the following":

> 1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> 3) the fee customarily charged in the locality for similar legal services;
>
> 4) the amount involved and the results obtained;
>
> 5) the time limitations imposed by the client or by the circumstances;
>
> 6) the nature and length of the professional relationship with the client;
>
> 7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> 8) whether the fee is fixed or contingent.

12

"Ultimately, 'the attorney bears the burden of establishing the fairness and reasonableness of'" a fee arrangement. Balducci, 240 N.J. at 594 (quoting Cohen, 146 N.J. at 156). This burden is satisfied by a preponderance of the evidence. Giarusso v. Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018). When a fee dispute arises, courts "ordinarily defer to the parties' agreement and the fee charged thereunder if it appears . . . that they meet a prima facie test of fairness and reasonableness." Alpert, 410 N.J. Super. at 538. "If that test is met and the client utterly fails to come forward with anything of substance to rebut the prima facie showing and no expert is produced to challenge the invoice as unreasonable, the court appropriately should enforce the agreement." Ibid.

III.

We first review the court's determination that defendant breached the parties' retainer agreement by failing to pay the amounts owed for legal services rendered. Regarding plaintiff's invoiced amount owed, defendant stated he "[a]t no point in time . . . ever questioned that [plaintiff] did the work that [it] billed for" but rather was asserting "[plaintiff] billed [him] for work that [he] told [plaintiff] not to do." Further, defendant did not dispute the hourly rate charged or time expended for services performed.

13

The court found defendant's late dispute of the amount owed "impact[ed]" his credibility because he only raised dissatisfaction with the work performed after it was fully completed and plaintiff sought to collect the amounts due. After evaluating the legal fees under RPC 1.5(a), the court was satisfied plaintiff met each factor. Notably, defendant did not refute any RPC factor at trial. In considering the testimony and exhibits, the court found defendant breached the retainer agreements and owed $36,845.29. The sufficient credible evidence in the record supports the court's findings.

Regarding the offer of judgment fees awarded, the court reviewed plaintiff's served offer of judgment and the testimony. The court awarded $1,042.44 in prejudgment interest as of the date of its decision and $13,140 in legal fees and expenses for the work plaintiff performed after the offer was served and not accepted by defendant.

Rule 4:58-2(a) specifically provides that if an offer of judgment is not accepted and the party making the offer obtains a money judgment in an amount that is 120% or more of the offer, "excluding allowable prejudgment interest and [attorney's] fees," the claimant shall be allowed, in addition to costs of suit:

> (1) all reasonable litigation expenses incurred following non-acceptance; (2) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of

14

discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by [Rule] 4:42-11(b), which also shall be allowable; and (3) a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance, such fee to be applied for within [twenty] days following entry of final judgment and in accordance with [Rule] 4:42-9(b).

"The Rule by its terms clearly conveys that there are two different forms of prejudgment interest—the [eight percent] allowed by Rule 4:58 and the ordinary interest allowed by Rule 4:42-11—and it provides that a plaintiff is not entitled to a double recovery of interest." Malick v. Seaview Lincoln Mercury, 398 N.J. Super. 182, 188 (App. Div. 2008). We have held "the two forms of interest serve different purposes, because the rate of interest allowed under Rule 4:58-2 is higher than the rate historically provided under Rule 4:42-11, and it runs from the date of the offer of judgment rather than from the filing of the complaint." Id. at 188-89.

Here, the court soundly determined that plaintiff was entitled to the costs of suit and interest pursuant to Rule 4:58-2(a) because the judgment of $36,845.29 was greater than 120% of the $22,500 offer of judgment. We further agree with the court's determination that prejudgment interest is calculated "from the date of the offer or the date of completion of discovery, whichever is later," to the date plaintiff "obtain[ed] a . . . judgment," which was August 20,

15

2024.[1]  We, therefore, discern no error in the court's award to plaintiff of attorneys' fees owed on its breach of contract claim and costs awarded under Rule 4:58-2(a).

A review of the record supports the court's dismissal of defendant's counterclaim.  Defendant alleged that counsel provided "unacceptable . . . legal services" and "were derelict in their professional [responsibilities]" because they failed to:  properly contest he had "NJ Estate income tax liability"; investigate "outstanding . . . tax challenge claims"; "prepar[e] for" argument before the probate judge; adequately represent him in "settlement negotiations"; and complete their accepted "duties."  Defendant's counterclaim is inescapably based on allegations of professional negligence.

The AOM statute (AMS), N.J.S.A. 2A:53A-27 requires:

> In any action for damages for personal injuries, wrongful death[,] or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill[,] or knowledge

---

[1]  We note the record indicates defendant also moved to correct the amount of the prejudgment interest award, which the court denied.  The court explained it had mistakenly ordered a reduced amount because it calculated prejudgment interest through the date of its oral decision on August 2, 2024.

16

exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

The Legislature defined a "licensed person" to include "an attorney admitted to practice law in New Jersey." N.J.S.A. 2A:53A-26(c); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 228 (1998) (explaining the AMS applies to attorneys in legal malpractice actions for a breach of the standard of care). The failure to comply with the AMS constitutes "a failure to state a cause of action." N.J.S.A. 2A:53A-29. Thus, as correctly determined by the court, defendant's failure to file an AOM was fatal.

The court soundly reasoned that defendant's counterclaim was based on breaches of professional standards because his allegations involved Marcus's and Pekerman's exercise of their legal judgment, specialized knowledge, and actions taken in litigating estate and appellate actions. His attempt to circumvent the AMS by labeling his claims as other than a professional negligence claim is unavailing. The court correctly dismissed defendant's counterclaim as it resounded in professional negligence and he failed to present an AOM and expert testimony.

The record also supports the court's determination that defendant's allegations do not fall within the narrow common knowledge exception to the

AMS. Our Supreme Court has explained that "[u]nder the common knowledge doctrine, . . . a malpractice case against a licensed professional may present triable issues without resort to the testimony of an expert." Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). "[T]he application of the common knowledge doctrine in a malpractice action" is warranted when "the issue of negligence is not related to technical matter peculiarly within the knowledge of the licensed practitioner." Ibid. (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961)).

Here, the common knowledge exception is inapplicable because defendant's allegations that Marcus and Pekerman breached their professional responsibilities are neither obvious nor within common experience. We have held that if a claim requires the fact finder to "evaluate an attorney's legal judgment," expert testimony is required. Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo, 345 N.J. Super. 1, 13 (App. Div. 2001), abrogated in part on other grounds by Segal v. Lynch, 211 N.J. 230, 264 (2012). Again, the court correctly determined that resolving defendant's claims required technical legal knowledge and experience; thus, expert testimony was necessary.

We also reject defendant's arguments that the court erred in denying reconsideration. We review orders denying reconsideration under Rule 4:49-2

for an abuse of discretion.  See AC Ocean Walk, LLC v. Blue Ocean Waters, LLC, 478 N.J. Super. 515, 523 (App. Div. 2024).  A trial court should only grant a motion for reconsideration when "either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."  Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 496 (App. Div. 2025) (alterations in original) (quoting Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010)).  Defendant has failed to demonstrate the court's ruling was palpably incorrect.  To the contrary, as we have already concluded, the record amply supports the court's judgment in favor of plaintiff and dismissal of defendant's counterclaim.

Finally, we decline to address defendant's newly raised arguments in his reply brief.  See L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) (determining that an argument raised for the first time in a reply brief is "deem[ed] . . . to have been waived"); Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

19

A-0822-24